*Hartford,*
June, 1842.

Roberts and another *against* Ripley and another.

Roberts
*v.*
Ripley.

*A, B* and *C,* partners, dissolved their partnership, by mutual agreement, and in their articles of dissolution, it was stipulated, that the business should be con_ tinued by *A* and *B,* until a certain future day, when the entire effects of the company should be divided between the three partners, according to the in. terest of each.   In transacting and closing the business of the partnership, *A* and *B* made use of the partnership name in the indorsement of notes.   In one of sundry partial divisions made pursuant to the articles of dissolution, a note given by *D* to the partnership, before its dissolution, but not at this time ma- ture, was indorsed by *B,* in the partnership name, and delivered to *C,* in part payment of his share ; such indorsement and delivery being made by the authority, and with the approbation, of all the partners.   After this transac- tion, *C,* by an instrument under his hand and seal, assigned to *B* all his (*C's*) " right, title and interest, in and to all property, both real and personal, including all notes, debts, contracts, claims and demands of every description whatsoev- er, in favour of, or due or owing to, the late partnership ;" and *B,* at the same time, by another instrument, after reciting that he had " purchased all the in- terest of *C* in all claims, debts and demands due and owing to the late part- nership," covenanted that he would " pay, or cause to be paid, all debts, claims and demands now owing by said late firm, which, as one of said firm, he is, or may be, liable to pay on their account, and to save him harmless therefrom."   *D,* when his note was so indorsed and delivered to *C,* was insolvent, and when it became due, it was duly protested for non-pay- ment.   *C* then assigned it, without consideration, to *E,* for the mere purpose of having a suit at law brought in *E's* name, for *C's* benefit, against the late part- ners, on the indorsement so made.   *E* brought such suit ; and, during its pend- ency, before any final settlement of the partnership concerns, *A* and *B* sought, by a bill in chancery against *C* and *E,* to restrain them from prosecuting it. Held, 1. that the legal and equitable title of the note was, by the indorsement and delivery to *C,* vested in him ; and that, by the assignment to *E,* it passed to him as trustee for *C ;*  2. that by the subsequent agreement between *C* and *B,* the title of this note did not become vested in *B ;*  3. that the unsettled state of the partnership concerns did not render it inequitable in *C* to enforce the collection of the note in question ;  4. that *C's* having transferred his in- terest in the partnership property, did not in equity preclude him from enforc- ing payment out of that property in the hands of *A* and *B.*

This was a bill in chancery, brought by *George Roberts* and *Edwin G. Ripley,* against *Philip Ripley* and *Alonzo S. Beckwith,* seeking for an injunction against the prosecution, by the defendant *Beckwith,* of an action at law, pending in his name, on a promissory note.

On the 24th of *March,* 1836, *Philip Ripley, George Rob- erts* and *Edwin G. Ripley,* of the city of *Hartford,* mutually entered into articles of co-partnership, to continue for five

years, under the firm of *Ripley, Roberts & Co.;* the business to consist in the purchase and sale of iron and steel, goods on commission, and such other articles as they should think proper to deal in. The business of the firm was carried on, under these articles, until the 24th of *April,* 1838, when their co-partnership was dissolved, in pursuance of articles of dissolution, from which the following are extracted :

"*Hartford,* 24th *April,* 1838.

" It is hereby agreed by and between the parties of this contract, that the firm of *Ripley, Roberts & Co.* shall be dissolved, on the 25th instant, of which public notice shall be given in the *Daily Courant.*

"It is further agreed, in consideration of the privileges herein conferred, that *George Roberts* and *Edwin G. Ripley* shall settle and collect the debts due, and pay the liabilities of *Ripley, Roberts & Co.;* shall attend to the sale of such domestic or other goods as remain on hand, and do all matters and things relating thereto, in a prudent and business-like manner, without charge to *P. Ripley,* in any way, except for actual expenses paid out to secure debts, or to protect the interest of the company, until the 1st of *February* next, when the entire effects of the company shall be divided as may be due or belonging to each, according to interest then held. In the meantime, neither party is to use any part of the company property or fund, in any manner but for the payment of the company debts, (and the bank account shall be kept distinct and separate from any other,) unless a partial division of the notes or effects of the company may be safely made at any time or times before 1st *February* next, in which case each shall receive in proportion to his individual interest in the concern. Each party shall be allowed to draw out his usual expenses from the funds of the concern.

" It is further agreed, that *George Roberts* and *Edwin G. Ripley* will purchase the interest of *P. Ripley,* in the stock of merchandize on hand 1st *February* last, agreeably to the valuation on the invoice book.

"It is understood and agreed that this contract is for the purpose of settling and closing the affairs and business growing out of our co-partnership contract, made the 24th *March,* 1836, and to which reference is now being had.

" In witness whereof we have hereunto affixed our hands, this 24th day of *April,* 1838.    Philip *Ripley,*
George *Roberts,*
*Edwin G. Ripley."*

*Roberts* and *Edwin G. Ripley* proceeded to settle and collect the debts due to, and to pay the liabilities of, the co-partnership; and in so doing, and also in procuring discounts of banks for the use and accommodation of said *George* and *Edwin,* in transacting and closing the business of the co-partnership, made use of the company name, in the endorsement of notes, which were, by them, placed in banks, for the purpose of discount and collection respectively, and which were respectively there discounted and collected, for their use and accommodation, in transacting and closing the business.

On the 5th of *January,* 1838, certain persons doing business under the firm of *E. B. Pratt & Co.,* being indebted to the co-partnership, made and delivered to them their promissory note of that date, for the sum of 578 dollars, 5 cents, payable two years after date, to said *Ripley, Roberts & Co.,* or their order, at the office of the *Connecticut River Banking Company,* in the city of *Hartford.*

This note was held by the co-partnership, until the dissolution, and until it was transferred and negotiated to *Philip Ripley,* as hereinafter stated.

On the 10th of *October,* 1839, *Edwin G. Ripley* purchased of *Philip Ripley,* who, by a written instrument of that date, under his hand and seal, for the consideration therein expressed, sold, assigned and conveyed to said *Edwin,* all his, the said *Philip's,* right, title and interest in or to the co-partnership property and effects of the then late firm of *Ripley, Roberts & Co.* Of this instrument, the following is a copy :

" Know all men by these presents, That I, *Philip Ripley,* of the city and county of *Hartford,* in consideration of the sum of thirty-four hundred and nine dollars and one cent, which I hereby acknowledge to have received in full, of *Edwin G. Ripley* of said city, have sold, and do hereby sell, assign, transfer and set over, unto the said *Edwin G.* all my right, title and interest in and to any and all property, both real and personal, including all notes, debts, contracts, claims and demands of every description whatsoever, *in favour of,* or due or owing to, the late firm of *Ripley, Roberts & Co.,* of said

city, whether in suit or otherwise, with full power to use my name, when necessary, for the collection of said claims, but solely at his own risk and expense : and I further agree and obligate myself to execute any deed of release, or other suitable and proper instrument, to convey to him any estate that may be taken or acquired in the settlement of said claims, and in no way to interfere with, hinder, or obstruct the collection or settlement of said claims. In witness whereof, I have hereunto set my hand and seal, at *Hartford,* this 10th day of *October,* 1839.      *Philip Ripley."*      [L. s.]

*Edwin G. Ripley,* at the same time, made and delivered to *Philip Ripley,* a written instrument of that date, under his hand and seal, of which the following is a copy :

"Whereas I, *Edwin G. Ripley,* of the city and county of *Hartford,* have purchased all the interest of *Philip Ripley* in all debts, claims and demands, due and owing to the late firm of *Ripley, Roberts & Co. ;* now therefore, in consideration of said sale to me, and of one dollar received by me, of said *Ripley,* I do hereby agree and obligate myself to said *Ripley* to pay, or cause to be paid, any and all debts, claims and demands now owing by said late firm, which, as one of said firm, he is, or may be, liable to pay on their account, and to save him harmless therefrom.

" In witness whereof, I have hereunto set my hand and seal, at *Hartford,* this 10th day of *October,* 1839.

[Signed]      *Edwin G. Ripley."*      [L. s.]

After the dissolution of the co-partnership, and before the 10th of *October,* 1839, partial divisions of the property and effects of the co-partnership, were, from time to time, made, by and between the late partners. At the time of one of these divisions, before the note of *E. B. Pratt & Co.* became due, this note was, by *Edwin G. Ripley,* in the name of the then late firm of *Ripley, Roberts & Co.,* endorsed in blank, with these words, *viz.* " late *Ripley, Roberts & Co.,* by *E. G. Ripley ;*" who delivered it, so endorsed, to *Philip Ripley,* on behalf of all the late partners ; which endorsement of said note, and delivery thereof, were made with the knowledge, consent, authority and approbation of said *Philip Ripley* and *George Roberts,* and each of them, for the purpose of making payment in part to *Philip Ripley,* of the capital stock which he had advanced to the co-partnership, under and in pursu-

ance of the articles of co-partnership, or of the profits which had been made by the co-partnership in carrying on the business, to which he was entitled, as one of the partners, or of both capital stock and profits ; and said note was, when it was endorsed and delivered to him, received by him in part payment of said capital stock, or profits, or of both.

It was not found, as the bill alleged, that when said note was so endorsed and delivered, there was any agreement or understanding between said *Philip, Edwin G.* and *George,* or any of them, that they should not be holden liable, in the same manner and to the same extent, upon said note and said endorsement, as endorsers upon negotiable paper in general are, by law, held responsible.

At the time of the endorsement and delivery of the note, the makers, *E. B. Pratt & Co.,* were insolvent, and unable to pay it ; and some other promissory notes, which, at the time of the dissolution, were the property of the co-partnership, and which, in some of the divisions of that property, were endorsed and delivered to *Philip Ripley,* for a similar purpose, and on a like account, with the note of *E. B. Pratt & Co.,* were, on the non-payment thereof by the makers, when they became due, paid and satisfied in full, by the late partners, to said *Philip,* under the liabilities of said partners as endorsers thereof; which payment and satisfaction was made by said *Edwin G.* and *George,* from the funds of the co-partnership.

The note of *E. B. Pratt & Co.* was, by *Philip Ripley,* after it was indorsed and delivered to him, and before it became due, left for collection at the office of the *Connecticut River Banking Company,* where it was, by its terms, payable. It was not paid, and was, thereupon, duly protested for non-payment. Afterwards, it was, by *Philip Ripley,* without the consent or knowledge of the plaintiffs, transferred and delivered to *Alonzo S. Beckwith,* one of the defendants. This transfer was made without consideration, for the sole purpose of enabling *Philip Ripley,* for his own use and benefit, to enforce the collection of the note, by a suit at law thereon, in the name of *Beckwith,* against the late partners. *Beckwith* has ever since held the note, and has caused a suit at law to be instituted thereon, at the instance and request of *Philip Ripley,* and for his sole use and benefit, against the late part-

ners ; which suit is now pending in the superior court for the county of *Hartford.*

The allegations of combination and confederacy, and fraudulent intention, charged in the bill against the defendants, were found to be not true, any farther than is implied or involved in the facts before stated.

The case was reserved for the consideration and advice of this court.

*Hungerford* and *Cone,* for the plaintiffs, contended, 1. That the firm of *Ripley, Roberts & Co.,* having been fully dissolved, before the transfer of the note of *E. B. Pratt & Co.,* to *Beckwith,* no title passed to him, by such transfer. *Abel* v. *Sutton,* 3 *Esp. Ca.* 108. *Ramsbottom* v. *Lewis,* 1 *Campb.* 279. *Kilgour* v. *Finlyson* & al. 1 *H. Bla.* 155. *Sanford* v. *Mickles,* 4 *Johns. Rep.* 244. *White* v. *Union Insurance Company,* 1 *Nott & McCord,* 556. 561. *Bank of South Carolina* v. *Humphrey,* 1 *McCord,* 388. *Lansing* v. *Gaine* & al. 2 *Johns. Rep.* 300. *Woodford* & ux. v. *Dorwin,* 3 *Term Rep.* 82. *Gow on Part.* 72. 310.

2. That if the legal title of the note was transferred to *Beckwith,* he took it subject to all the equities and rights to which it was subject in the hands of *Philip Ripley. Talman* v. *Gibson,* 1 *Hall,* 308. *Comstock* v. *Hoag* & al. 5 *Wend.* 600. 602. *Ayer* v. *Hutchins* & al. 4 *Mass. Rep.* 370. *Wilson* v. *Holmes,* 5 *Mass. Rep.* 543. *Thompson* v. *Hale,* 6 *Pick.* 259. *Bayley on Bills,* 544., and authorities cited *ibid.*

3. That the conveyance from *Philip Ripley* to *Edwin G. Ripley,* of *October* 10th, 1839, transferred all his interest in the note to *E. G. Ripley ;* and the writing of *E. G. Ripley,* of the same date, contained no engagement to pay the note to *Philip Ripley.*

4. That admitting that the conveyance did not transfer *Philip Ripley's* interest in the note, still it conveyed all his interest in the fund liable (if any there be) to him for the satisfaction of the note—*i. e.* the partnership property ; and it cannot be enforced as against that fund, or the property of *Edwin G. Ripley.*

5. That allowing that *Philip Ripley,* at the time of transferring the note to *Beckwith,* had a claim by virtue of the partnership indorsement, it was upon the partnership ; and

the remedy should have been by a bill in chancery for an account, he being liable to satisfy a portion thereof out of his own funds ; and *Beckwith* has no better claim, nor any other.

*T. C. Perkins,* for the defendant, contended, 1. That the indorsement of the note of *E. B. Pratt & Co.,* by *Edwin G. Ripley* to *Philip Ripley,* vested in the latter a valid title, notwithstanding the previous dissolution of the partnership ; such indorsement having been made with the knowledge, consent and approbation of all the partners, and on their behalf.

2. That the defendant having the legal title, a court of chancery will not restrain him from enforcing his right, unless it is *clearly inequitable* that he should do so ; but the facts found, shew the reverse. The plaintiffs had all the partnership property left in their hands expressly to pay partnership debts. They have paid others like this, and should pay this.

3. That the note in question was not included in the defendant's sale to *Edwin G. Ripley.* This sale only transferred the defendant's interest to the partnership property after payment of the partnership debts; against which *Edwin* indemnified him.

4. That the defendant having a good note, could put it into the hands of a trustee to sue ; and the trustee can lawfully prosecute his suit. *Mauran* v. *Lamb,* 7 *Cowen,* 174. 176. *Ogilby* v. *Wallace,* 2 *Hall,* 553. 557. *Nevins* v. *Townsend* & al. 6 *Conn. Rep.* 5. *Moore* v. *Denslow* & al. 14 *Conn. Rep.* 235. *Pitcher* v. *Barrows* & al. 17 *Pick.* 361. 363. *Packard* v. *Nye,* 2 *Metc.* 47. 52. *Paine* v. *Thacher,* 25 *Wend.* 450. 452.

STORRS, J. There is no doubt that the legal title to the note is in *Beckwith,* who holds it as a bare trustee for *Philip Ripley,* the other defendant.

It is unnecessary to consider whether the members composing the co-partnership of *Ripley, Roberts & Co.* would have been bound, by an endorsement of this note, made by one of the partners, after the dissolution, either by virtue of any implied power which he possessed, or by the stipulations in the articles of dissolution, or by any acts of the partners which may be claimed to amount to a ratification of such endorsement. It is found in this case, that one of the part-

ners endorsed the note to *Philip Ripley*, another of the partners, with the knowledge, consent, authority, and approbation of all the partners, and on their behalf. It is, therefore, as though each of them had endorsed it personally. That an endorsement of negotiable paper, by a firm, to one of its members, vests in him the legal title to such paper, admits of no question. *Nevins* v. *Townsend* & al., 6 *Conn. Rep.* 5. *Moore* v. *Denslow* & al. 14 *Conn. Rep.* 235. *Pitcher* v. *Barrows* & al. 17 *Pick.* 361. 363. *Philip Ripley*, therefore, was vested with the legal title to the note, by such endorsement to him, for a valuable consideration; and by him it was duly transferred to *Beckwith*, who has thus become the legal owner of it. Indeed, the bill in this case can be sustained, if at all, only on the idea that he has the legal title; for the want of such title would constitute a complete legal defence, and there would be no occasion for asking the interposition of a court of equity by injunction. Such interposition is also unnecessary to protect the plaintiffs, on any other legal ground of defence which they may have against the note.

The plaintiffs, however, set up various equitable grounds, on which they insist, that the defendants should be restrained from prosecuting said action.

In the first place, they claim, that the said *Philip*, by the instrument of *October* 10, 1839, which he executed to *Edwin G. Ripley*, (one of the plaintiffs,) transferred all his interest in the note in question to said *Edwin*, who thereby became equitably entitled thereto. The question whether the note was thus transferred, depends on the true construction of that instrument, in connexion with that of another instrument, relating to the same subject, executed at the same time, by the said *Edwin* to the said *Philip*. It is found, that, after the dissolution of the co-partnership, and before the execution of said instruments, partial divisions of the partnership property and effects were made, from time to time, between the partners; and that in one of those divisions, the note in question, which belonged to the co-partnership at the time of its dissolution, was, by one of the partners, with the knowledge, approbation, and authority of all of them, on their behalf, endorsed and delivered to said *Philip*, and was by him received in part payment of the capital which he had advanced to the partnership, or of his part of the profits of the part-

nership, or both of them ; and that there was no agreement or understanding, by said partners, that they should not be liable and obligated by said endorsement, in the same manner and to the same extent as endorsers of negotiable paper usually are by law.　The perfect legal and equitable title of the note having thereby become vested in said *Philip*, the said instruments were afterwards executed under seal, by the said *Philip* and *Edwin* respectively, to the other ; by one of which the said *Philip* did "sell, assign, transfer, and set over (among other thiugs) to the said *Edwin* all his, the said *Philip's*, right, title and interest in and to any and all property, both real and personal, including all notes, debts, contracts, claims and demands of every description whatsoever, in favour of, or due or owing to, the late firm of *Ripley, Roberts & Co.* ;"—and by the other of which instruments, the said *Edwin*, after reciting that he had "purchased all the interest of said *Philip* in all claims, debts, and demands due and owing to the late firm of *Ripley, Roberts & Co.*," covenants, that "he will pay, or cause to be paid, any and all debts, claims and demands [then] owing by said late firm, which, as one of said firm, said *Philip* is or may be liable to pay on their account, and to save him harmless therefrom."　Were it not that the expressions used in the instrument from said *Philip* purport to convey to *Edwin* all notes, demands &c., "*in favour of*" the late firm, there could be no pretence that the note in question would be embraced by such conveyance.　If that expression were omitted, it would be clear beyond question, that the intention was, to convey to *Edwin* only the interest of *Philip* in the property *then* owned by, and the notes and debts *then* due to, the said firm ; and that therefore, as the note in question had previously become the sole property of said *Philip*, and was then due and owing to him alone, it would not be embraced by the conveyance to said *Edwin*. That note, or any interest therein, would no more have passed by that conveyance, than if it had previouly been endorsed and transferred to a person not belonging to the firm, instead of the said *Philip*.　It was not the property of, nor due to, the firm.　It was owned by *Philip* individually, and in the same manner as his other separate property.　And the expression "in favour of," used in the conveyance to *Edwin*, and which is strongly urged by the plaintiffs as vesting in him

the interest of *Philip* in this note, does not, in our opinion, vary this construction, or evince a different intention in the parties. The object and design of the instrument, obviously, was only to transfer the interest of *Philip* in the partnership property, including all debts then due to the firm ; and the phrase mentioned, even if taken literally, is not inconsistent with that intention, or at all expressive of a different one. If it means here, as it sometimes does, when applied to mercantile instruments, *payable to,* it is not true that the note was, when said conveyance was executed, payable to said firm :— it is drawn payable to *Ripley, Roberts & Co.,* or their order : it had been endorsed to said *Philip,* and was, consequently, at the time of the conveyance, payable to him, by its terms. If it was meant to indicate, as it would in common parlance, the person having the beneficial interest, that person was the said *Philip.* If it were necessary to pursue the subject, it might be added, that the instrument executed at the same time, by *Edwin* to *Philip,* and which, being between the same parties and relating to the same transaction, is to be looked to in their construction, recites, that *Edwin* "had purchased all the interest of *Philip* in all claims, debts, and demands, due and owing to the late firm of *Ripley, Roberts & Co.*"— *i. e.* at the time of said purchase ;—thus clearly showing the intention of the parties to be agreeable to the construction which has been put on said conveyance. This view is further confirmed also, not only by the nature of the arrangement indicated by the two instruments, which evidently was intended to put *Edwin* in the place of *Philip,* in regard to all the property and liabilities of the partnership, but by the averment in the bill, immediately preceding the recital of the conveyance to *Edwin,* that *Edwin* purchased of *Philip,* and that *Philip,* by said instrument, " conveyed to him, his the said *Philip's,* right, title and interest in or to the co-partnership property and effects of said then late firm of *Ripley, Roberts & Co.*" The said *Philip,* therefore, notwithstanding said conveyance, continued to be the owner of the legal and equitable title to said note. That any mistake occurred in drawing up the instrument executed by said *Philip,* is not one of the grounds relied on in the bill. It is not either alleged or claimed. Were such the case, it should have been clearly averred, and made a distinct ground of relief.

The plaintiffs, in the next place, insist, that whatever claim the said *Philip* may have on said note against the partnership, it is subject to the final settlement of the partnership accounts ; and that until those accounts shall be adjusted, it is uncertain whether any thing will be due to said *Philip* from said firm ; and that therefore, it is inequitable that he should now be permitted to collect said note.

It does not indeed, appear, that there has been any final adjustment or settlement of the concerns of the partnership ; and if there has not, *Philip Ripley* may, on such settlement, be found to be indebted to said partnership, or a creditor, for less than the amount due on this note.   It is also true, that this note may form an item in the final settlement of the partnership accounts ; and that the payment of it may vary the relative situation of the partners, on such settlement.   The mere possibility of these results is not, however, sufficient to induce a court of equity to interpose by injunction.   It is unnecessary to consider what state of facts growing out of such an adjustment, would be sufficient to warrant such interposition.   If in fact any such state of facts exists, it is necessary that it should be explicitly averred, by the plaintiffs, and thus made the ground of the remedy they seek.   It is for them to show affirmatively the existence of such circumstances as in equity ought to restrain the defendants from prosecuting the action at law on the note in question ; and until they are so shown, the court should not interfere.   In other words, it is for the plaintiffs to make out a case for equitable relief. The court surely cannot presume, either that on a final settlement of the partnership concerns, the state of the accounts will be such as to extinguish the amount due on this note, or render it inequitable to collect it.   If there is any presumption in this case, it is quite the other way.   The fact, that such progress had been made in the closing of the partnership business as that the partners had made among themselves several partial distributions of the partnership property, and that the note in question was transferred by them to the said *Philip*, in one of those distributions, towards what was due him from the partnership fund, most strongly evinces, that, at that time, he would be a creditor of the partnership to the amount due on the note, after its whole affairs should be adjusted and settled, and indeed is inconsistent with any other

*Hartford,*
June, 1842.

Roberts
*v.*
Ripley.

supposition. That such was the apparent condition of their affairs, at that time, is evident. There is no averment or claim, that there was any error on that subject, or that such is not the state of their affairs now. Under these circumstances, there is no reason why the collection of the note should be suspended, in order to await the period when the settlement of the partnership concerns shall be brought in form to a close. Nor was such the intention or understanding of the parties. The note was transferred to, and received by, *Philip Ripley*, in part payment of the indebtedness to him from the partnership. It was as though the amount due on it had been paid to him in cash. If that had been done, it would not be claimed, that he could be compelled, on the facts appearing in this case, to refund it. The endorsement of the note created an immediate obligation on the endorsers to pay it, if it was dishonoured by the makers, and the proper steps taken by the holder ; which was done in this case. It is found, that there was no agreement between the partners to vary that obligation. The endorsers are, therefore, under the same liability as if it had been negotiated to one who was not a partner. To arrest the suit on the note would, therefore, violate the express contract between the parties. The same course of reasoning, which is urged by the plaintiffs on this point, was resorted to, but without success, in *Nevins* v. *Townsend*, 6 *Conn. Rep.* 5. which bears a strong analogy, and in which the reasoning of the court has a forcible application, to the present case, if it does not in effect decide it.

It is, in the last place, insisted, by the plaintiffs, that as *Philip Ripley* has transferred all his interest in the co-partnership property, which is the fund liable to him for the satisfaction of this note, it cannot equitably be enforced as against that fund. The interest of *Philip Ripley* in that fund was only what he would be entitled to in it, after the partnership debts should be paid ; and that, consequently, was all that he conveyed to *Edwin G. Ripley*. The note in question was one of the debts due by the partnership ; and that circumstance, we are to presume, was considered by the parties, when the contract shown by the two instruments of *October* 10, 1839, was entered into ; and diminished, to the extent of *Philip's* proportion of the amount due on it, the

consideration paid by *Edwin* to *Philip*. In addition to this, *Edwin*, by his agreement of that date, covenants with *Philip*, that he will pay and save the said *Philip* harmless from all claims, debts and demands, then owing by said firm, which, as one of said firm, he is, or may be, liable to pay on their account; and the conveyance by *Philip* of his interest in the debts due to the partnership formed the very consideration of this agreement on the part of said *Edwin*. To permit *Edwin* to retain the interest of *Philip* in the partnership property, and to throw on *Philip* the loss of a debt due by the partnership, would, therefore, be not only palpably unjust, but against the spirit, if not the letter, of the contract entered into between the parties. The note stands on the same ground, in this respect, as if it had been negotiated to a stranger.

The superior court should be advised, that the bill ought to be dismissed.

In this opinion the other Judges concurred.

New trial not to be granted