## CARL v. KNOTT.

1. PRIOR ADJUDICATION: ESTOPPEL. The judgment of a court is a bar to any subsequent proceeding founded upon a cause of action embraced in the issues joined by the pleadings and settled by the judgment.

2. SAME. It is not always necessary that it should appear affirmatively on the face of the record that the cause of action was embraced in the pleadings in the action which is set up as a bar; but when a decree in chancery shows affirmatively that the cause of action was not therein determined, such a decree cannot be pleaded as a bar.

3. COPARTNERSHIP: DEBTS OF COPARTNERSHIP. In ascertaining the assets of a firm, as between the partners, the excess of the indebtedness of one partner over that of his copartner to the firm, and not his entire indebtedness, in the absence of any agreement, is considered as forming a part of such assets.

4. PARTNERSHIP AGREEMENT: QUESTION FOR JURY. The terms of a contract for the adjustment of differences between copartners in the settlement of their firm business should be ascertained by the jury, to whom an issue involving the same is submitted.

*Appeal from Cedar District Court.*

TUESDAY, JUNE 14.

THIS is an action at law, brought by Carl, the plaintiff, against Knott, the defendant, on an account.

Knott and Carl, the plaintiff and defendant, formed a copartnership in the mercantile business, about the first day of January, A. D. 1857, and continued in business as partners until about the twenty-third day of January, A. D. 1858. Their place of business was Tipton, in Cedar county.

About the twenty-third of January, 1858, they sold out to one Tomlinson. Knott soon afterwards left the county and went to Carson Valley.

At the time of the dissolution and selling out to Tomlinson, the firm was largely indebted. The assets of the firm, on the face of them, were nominally sufficient to pay their debts and, by agreement of both parties, the assets

were placed in the hands of one Joseph K. Snyder to collect and pay the debts of the firm.

It turned out that the assets were not sufficient to pay the debts, and Carl claims that he had to pay some of the debts out of his own private funds.

Knott wrote to Snyder, the agent of both parties, and proposed that Carl should take the assets and property of the firm, and pay all the debts except one; and that he, Knott, would pay the debt due to Ad. Knott, being two judgments amounting to about eight hundred dollars. Carl accepted the proposition and took possession of the assets and property and paid the debts.

Knott failed to pay the Ad. Knott debt at the time, as he proposed. On the return of Knott, and on the third day of April, 1861, Carl filed a bill in Chancery, on the equity side of the District Court of Cedar County, against Knott, setting forth the previous partnership, and praying for a dissolution of the same, and that the affairs thereof might be adjusted, and for a decree for the sum of four thousand three hundred and fifty dollars, that sum being the amount claimed to be due from defendant, on the various items charged, a copy of which items is annexed to the bill and marked "schedule B."

An answer was filed by Knott to this bill, and the cause was referred to the Honorable William H. Tuthill, to hear the evidence and report his findings of facts and conclusions of law. The referee heard the case, and reported in favor of a decree for Carl for eight hundred dollars, being the amount of the Ad. Knott debt, which, by agreement, the defendant Knott was to pay, and also reported: "That the proposition of Knott and acceptance of Carl constituted a contract, and, as between themselves, submerged the previous liabilities of the two contracting parties to each other in matters appertaining to said copartnership." He further reported: "That all the remaining assets of the firm of

Knott and Carl shall be the property of Carl, and that Carl should pay all the outstanding debts or liabilities of the firm." A decree was entered in accordance with the recommendation of the report, and it was also ordered: "That the said Carl pay all the outstanding dues, debts and liabilities of the firm of Knott and Carl, now remaining due and unpaid; and that the said George Carl have all the remaining assets of said firm, of whatever kind or nature; and that all remaining notes, accounts or claims of said firm remaining due to them on notes, book accounts or otherwise, from all persons whomsoever, be the property of said George Carl, and that he have the right to bring action thereon, in his own name, for the recovery thereof."

After this, plaintiff brought this action on the individual account of Knott to the late firm of Knott and Carl, claiming it as part of the assets, under the terms of the foregoing decree. Knott answered, setting up a former adjudication on the same accounts in the said proceeding in equity. Trial and verdict for plaintiff, and defendant appeals.

*Cook & Drury* for the appellant.

*Piatt & Spicer* for the appellee.

WRIGHT, Ch. J. It is very manifest, from the report of the referee in the former case, the final decree, and from his testimony in this, (admitted without question or objection) that the account now sued for was not included in the final adjudication. From the record we conclude that the bill and pleadings contemplated a settlement of the entire accounts of the respective parties, plaintiff claiming that in such settlement (including what he had paid for the firm and received of its assets, as well as from his individual accounts), defendant was largely his debtor. On the other hand, defendant, by his answer, insisted that plaintiff was indebted to him. The referee proceeded to hear the case,

for the purpose of settling and adjusting their respective rights and liabilities, and, beyond question, his investigation extended to the very accounts sued upon in this case. The testimony, however, developed the fact that a proposition had been made and accepted, which made it the duty of the plaintiff to pay all the liabilities, (except the judgment to Ad. Knott), and that he was to have all the assets. Finding that the parties had thus arranged their matters, he proceeded no further, but reported as a fact that all their previous liabilities pertaining to the partnership were merged in this contract, that plaintiff had paid the judgment to Ad. Knott, which, under the agreement, defendant was bound to refund, and that all other assets should be the property of Carl. This report was confirmed, and an express order made that plaintiff might recover on all accounts, &c., owing to the firm, in his own name. In reaching this conclusion, the referee had no reference whatever to the individual accounts of the parties. And it is by no means a fair construction of the language of his report, that he meant that all liabilities of the parties, as between themselves, except the $800 owing to Ad. Knott, were merged in the settlement. Not only so, but his testimony shows that the evidence on the subject of the settlement " overshadowed the whole case," and this determined his finding.

The question to be determined is not alone whether the matter now in controversy was included in the issues joined in the former suit, but whether the judgment or determination was such as to estop the party from again claiming for the same demand. 1 Greenl. Ev., §§ 529, 530. It would be thus included, if it was covered by or embraced in the pleadings; and to be so embraced, it is not necessary that it should always appear affirmatively from the face of the record. Thus, under the former practice, when the party might plead specially, or give the matter in evidence under the general issue, if the point was actually tried and deter-

mined, the estoppel was as effectual in the one case as the other. If so tried, and the record did not disclose it, it was competent to prove, in connection with the record, by parol, that the matter did arise, and was adjudicated. *George* v. *Gillespy*, 1 G. Greene, 421; *Lawrence* v. *Hunt*, 10 Wend., 89. But still, if the cause of action was not embraced in the judgment in the former suit, the party is not estopped. By this it is not meant that the bar would not apply to a case when it appeared that the judgment was general for one party or the other, there being several distinct causes of action, covered and disposed of by such general adjudication. In such a case, the identity of the causes of action being once established, the law will not allow them to be again drawn into question. *Young* v. *Black*, 7 Cranch, 564; *Haight* v. *City of Keokuk*, 4 Iowa, 207. But it is a very different thing when, in a decree in chancery, it appears, affirmatively, that the rights of the parties were adjusted upon a ground which neither, in its general or special statement, includes the matter now in controversy, but which, on the contrary, excludes and leaves it open. And see *McDowell* v. *Langdon*, 3 Gray, 513; *Buttock* v. *Holden*, 8 Cush., 233; *Henderson* v. *Kenner*, 1 Rich., 574; *Goddard* v. *Selden*, 7 Conn., 521; *Croft* v. *Steel*, 6 Watts, 373; *Snyder* v. *Cory*, 2 Johns., 227; *Wright* v. *Batter*, 20 Id., 367; *Wood* v. *Jackson*, 18 Wend., 10; *Millett* v. *Foxcroft*, 1 Story, 474.

So far, therefore, as the instructions given relate to the question of former adjudication, they are substantially correct. If the Court had explained and illustrated more at length the office of the parol evidence introduced, and how far it could legitimately be considered in determining what was in controversy in the former suit, the jury would doubtless have had a clearer and better defined idea of the object of such testimony, and of their duty in the premises. It was the duty of the Court, however, to construe the record offered in evidence, and to state to the jury what it

did or did not include, the question of the identity of the transaction being left for their determination. And while some of the instructions, touching this subject, asked by defendant and refused, were, as abstract propositions, correct, we would not, under all the circumstances, for this reason alone, reverse the case.

There is one feature of the transaction, however, which we think was not properly submitted to the jury. By the propositions made to plaintiff through Snyder and accepted, he was to take the assets and pay the debts. By this was it meant and intended between the parties, that defendant was to pay plaintiff what he might be owing the firm— was this a part of the assets—or did they mean that each party should be relieved of any liability to the firm or each other, so far as related to their partnership accounts, plaintiff taking all the accounts and demands owing by others, and all the property, and paying all the debts except one? The arguments for and against either construction we need not advance, it being sufficient to say that the question should have been submitted to the jury, whether there was any agreement that defendant should pay this account. In the absence of agreement, of course as a partner, he would only be liable to plaintiff, in their accounting, for so much as his account exceeded plaintiff's, and not for the whole amount. If there was a contract, however, which entitled plaintiff to the entire amount owing by defendant to the firm, by which it was understood to be assets, by this the parties should be governed, and under it their rights must be adjudicated. The third instruction, asked by defendant, sought to get this question to the jury. It was refused, however, and the jury were not allowed to take into consideration the true nature and scope of the contract. And as it seems to us, that while the judge below took the correct view of the main issues in the case, he nevertheless withheld from the jury a question

manifestly material in settling the rights of these parties, we are constrained to hold that the judgment should be reversed. The order of the Court, in the former proceeding, on the subject of assets, must be construed in the light of the contract, the facts found, and the final report of the referee.

Reversed.