## MURDOCK v. MEHLHOP *et al.*

Partnership: DISSOLUTION: INDEBTEDNESS OF PARTNER TO FIRM. Articles of copartnership provided "that each partner should be allowed to draw from the concern not exceeding eighteen hundred dollars per annum for their personal expenses, and that their personal accounts should stand due to the concern in the same manner as any other account due by a party unconnected with the business." The partnerhip was subsequently dissolved, one partner purchasing, as stipulated in the written agreement of dissolution, "all the right and interest of the other partner in the stock, cash, notes, book accounts, assets, and every thing connected with the business," for the sum of $7,250, a part of which was paid down, and notes executed for the balance. *Held*, in an action upon these notes, that an account of the firm against the partner selling out was canceled and extintinguished in the agreement of dissolution and purchase, and could not be plead as a set-off against the notes.

*Appeal from Dubuque District Court.*

MONDAY, DECEMBER 14.

ACTION upon promissory notes executed by defendant Mehlhop, and indorsed by the other defendants to plaintiff, amounting to the sum of $2,000.

The answer of defendant Mehlhop sets up, by way of a cross demand, an account for cash, goods, etc., against plaintiff, to the amount of $1,900, which, as shown by the answer, originated in the following manner: Plaintiff and defendant Mehlhop were copartners in the grocery business. Their articles of copartnership contained the following among other stipulations:

" It is agreed that each partner shall be allowed to draw from the concern not exceeding eighteen hundred dollars per annum for their personal expenses, and that their personal accounts shall stand due to the concern in the same manner as any other account due by a party unconnected with the business." Upon the dissolution of this copartnership, under the written terms thereof, the defendant Mehlhop " agreed to purchase all right and interest of said John Murdock in the stock, cash, notes, book accounts, and every thing connected with the business conducted by them," paying therefor $7,250 — $4,000 cash and the balance in time notes, non-negotiable in form, and secured by indorsement of the other defendants. The notes in suit are a part of those so executed.

Copies of the articles of copartnership and the written terms of the dissolution of the firm are made exhibits to the answer.

Plaintiff demurred to the answer, on the ground that, by the terms of the dissolution of the copartnership, the indebtedness of plaintiff to the firm was settled and discharged, and that the execution of the notes by plaintiff,

and their acceptance by defendant, raises a presumption of the settlement and payment of plaintiff's indebtedness to the firm, etc. The court sustained this demurrer. The defendants, electing to stand by their answer, excepted to the ruling of the court, whereupon judgment was rendered for plaintiff. Defendants appeal.

*Shiras & Van Duzee* for the appellants.

*Beach & Gray* for the appellee.

Beck, J. — The only question made by the respective counsel for our determination is this: Do the plead-PARTNERSHIP: ings show that the account of the firm against dissolution: indebtedness plaintiff was canceled and discharged in the of partner to firm. dissolution of the copartnership?

A majority of the court answer this question affirmatively, and base their conclusions upon the following reasons: In the absence of an express agreement the plaintiff would be liable to defendant only in the amount his own account to the firm might exceed defendants', and not in the full amount thereof. *Carle* v. *Knott*, 16 Iowa, 379.

The pleadings set up no such special agreement, and there is no averment that plaintiff expressly undertook to pay defendant the whole amount of his account to the firm. Defendant's counsel insist, that, by a proper construction of the articles of copartnership and the written terms of dissolution, such is shown to have been the understanding of plaintiff. Under the first named instrument it is provided, that the accounts of each partner to the firm " shall stand due to the concern in the same manner as any other account due by a party unconnected with the business." By the second instrument the defendant became the purchaser of all the right and interest of plaintiff in the accounts, notes and other property of the

firm. It is claimed that plaintiff's account to the firm was a part of its assets, being considered under the articles of copartnership as other choses in action of the firm, and by the terms of the dissolution were transferred to defendant.

But a majority of the court consider that plaintiff's indebtedness to the firm is in no way affected by the language of the articles of copartnership, and that it is to be considered in the same character as the debt of a partner to the firm, without such provision, which in no way changes the rights of the parties. The interest of plaintiff, which he sold to defendant, was the assets of the firm after deducting his indebtedness. This was all the interest he had in the property, and it is all he sold by the terms of the written instrument which embodies the agreement of sale. Upon a distribution of the property of the firm, plaintiff's share would have been half of the assets, less his account. This was, therefore, his interest in the assets of the firm, and what he sold to defendant.

A great deal of force is attached by defendant's counsel to the language of the articles of copartnership above quoted, from which it is argued that plaintiff's account with the firm should be treated as other assets, and was consequently transferred in the sale to defendant. But it will be observed that in the dissolution of the firm, the partners do not transfer the assets to defendant. Plaintiff simply transfers his interest in them. We have pointed out what that interest was. If plaintiff's argument is sound, it would lead to the curious result of one person transferring to another a debt which he himself owes; that is, plaintiff owed to the firm $1,900, and he transfers this debt to defendant. This result could hardly have been contemplated by the parties.

A majority of the court are of the opinion, that, con-

struing the two instruments together in the light of the facts as disclosed by the answer, it does not appear that there was any intention of the parties that plaintiff should pay the account to defendant, or any agreement between them that it should not be canceled and discharged by the dissolution, and should become, in the hands of defendant, a claim against the plaintiff.

Affirmed.

### June Term, 1869.

After the foregoing opinion was filed, the appellant's counsel presented a petition for rehearing, which was granted, and the cause was reargued for both parties by the same counsel.

The following opinion was delivered by the chief justice on the rehearing:

Dillon, Ch. J. — This action is upon two notes of hand made by the defendant to plaintiff, dated August 21, 1866, payable respectively November 1st and December 1st thereafter, and indorsed by Hinds and Graves as sureties for the principal defendant. Plaintiff and defendant had been partners, and the defendant's answer, relied on, was one setting up a cross demand against the plaintiff for $1,900, arising out of copartnership transactions. This $1,900 consisted of the partnership account of the firm of Mehlhop & Murdock against Murdock. In other words, it consisted of the personal account against the plaintiff, standing upon the books of the firm. This account is composed of many items, consisting mainly of cash and groceries, and extends from January, 1865, to August, 1866.

The answer sets out the written contract of copartnership formed between Mehlhop and Murdock, January 1st, 1865, and the written contract of dissolution, entered into

in August, 1866, in pursuance of which latter contract, the notes in suit were executed. The question presented is, whether, taking these two contracts, together with the facts therein recited, they show a subsisting indebtedness by the plaintiff to the defendant in respect to the above mentioned account for nineteen hundred dollars.

The material portions of the articles of copartnership entered into January 1, 1865, are sections 1, 2, 3, 4, 5 and 8. These are as follows:

"1. The style of the firm shall be Mehlhop & Murdock.

"2. John Mehlhop shall furnish the sum of ten thousand dollars, and John Murdock shall furnish the sum of five thousand dollars capital.

"3. It is agreed, that each partner shall be allowed to draw from the concern not exceeding eighteen hundred dollars per annum for their personal expenses, and that said personal accounts shall stand due to the concern in the same manner as any other account due by a party unconnected with the business.

"4. At the end of the first year, John Mehlhop shall be allowed interest at the rate of six per cent on any sum he may have in the business over double the amount furnished by John Murdock; and, during the balance of the term of the copartnership, each partner shall be credited with interest at six per cent on the amount furnished by him.

"5. The net profits of the concern, at the expiration of the copartnership, after paying all necessary expenses, taxes, debts, etc., shall be equally divided between the partners. * * *

"8. This copartnership is formed for the term of five years, but may be dissolved at any time by the mutual consent of both partners."

The material portions of the contract of dissolution above referred to, concluded in August, 1866, are the following:

" 2. John Mehlhop agrees to purchase all the right and interest of said John Murdock in stock, cash, notes, book accounts, and every thing connected with the business conducted by them, and agrees to pay him for said interest seven thousand two hundred and fifty dollars, in the following manner:

" 3. Four thousand dollars cash in hand, one thousand dollars first day of October, one thousand dollars first day of November, one thousand dollars first day of December, eighteen hundred and sixty-six, and two hundred and fifty dollars on the first day of January, eighteen hundred and sixty-seven. Time payments to be made in notes satisfactorily indorsed or secured.

" 4. Mr. John Mehlhop further agrees to assume and cancel all the debts of said firm and all liabilities now existing, or hereafter arising against said firm. 2. To free the said John Murdock from all responsibility and risk in connection with said debts and liabilities. 3. And to accept in consideration therefor said John Murdock's interest in good will, stock, books, accounts, cash, lease of building, assets and every thing in connection with said business.

" 5. And it is further understood and agreed that when John Mehlhop carries into effect his part of said contract, a notice of dissolution of said partnership shall be published in the city daily papers, and that said John Murdock shall give up entire possession and control of every thing in connection with said business, and to sell unto the said John Mehlhop all his interest in and right to the said stock and assets of every kind and nature of the said firm of Mehlhop and Murdock."

The notes in suit are those referred to in the contract of dissolution as being payable November 1st and December 1st thereafter. To support his cross claim, based on the account, the defendant relies upon the third para-

graph in the articles of copartnership, and the second and fourth paragraphs in the contract of dissolution.

The position taken by the defendant is, that the articles of copartnership form, so to speak, the constitution or organic law of the firm, controlling the rights of the parties, and presumptively applying to all acts done by the parties as partners; that they cannot be ignored, but must have effect given to them; that by these articles the individual accounts of the partners formed a portion of the assets of the firm, that both parties knew this, and settled with that view; that by the contract of dissolution, all of the assets of the firm became the property of the defendant, including the personal account of the plaintiff to the firm, which account may be enforced by action or by way of cross demand. Such is the substance of the propositions maintained by the defendant.

It is admitted, that, in determining the rights of the parties, both the contract forming, and the one dissolving, the partnership must be considered. But the court are of opinion, the same as before, that the account of the firm against the plaintiff was not an asset of the firm within the meaning of the contract of dissolution, whereby plaintiff transferred to the defendant all his (plaintiff's) interest in the good will, assets, book accounts, etc.

Since the third paragraph of the articles of copartnership has been much discussed, both in the original arguments and on the rehearing, and as it constitutes the ground work of the defendant's case, it is proper briefly to notice it. It is plain that it gives each partner the right "to draw from the concern not exceeding $1,800 per annum for his personal expenses." It is then added, "that said personal accounts shall stand due the concern, in the same manner as any other account due by a party unconnected with the business."

What is the meaning of this last provision? Does it

Murdock v. Mehlhop.

mean, as the defendant contends, that if one partner shall draw out $1,800 for his personal expenses during the year, as he has a right to do, that the firm at the end of the year has a right to sue him therefor, the same as it might sue any other debtor? It is believed not. That view would result in this: the partner has a right to draw it out, and yet the firm has a right to sue him for it. Such an unreasonable construction should not be adopted if a more reasonable one suggests itself.

It will be seen that the parties contributed capital in different amounts. Mehlhop put in twice as much as Murdock. Now this clause, declaring the liability of the partners for their personal accounts, was inserted most probably with a view to make the parties liable as between themselves, to account for interest on the amount thus drawn out for personal expenses. And it might be admitted, without the admission at all involving the plaintiff's liability to the defendant, on the account, that one purpose of the provision in question was to make it the duty of both parties to make good to the capital of the firm any amounts which might be taken from it by them in the way of personal expenses.

But whatever may have been the real purpose of the latter portion of the third article, it would be unreasonable to hold, in view not only of the object but of the special provision of the contract of dissolution, that its effect would be to allow the defendant to recover the amount of the firm's account against the plaintiff, for his personal expenses.

The period for which the contract was formed, had not elapsed. The parties wished to dissolve the connection. They did so. They put their contract into writing. Mehlhop, the party who contributed the largest amount of the capital — the money partner — buys his copartner out. He buys his partner's "interest in the good will,

stock, book account, cash, lease of the building, assets, and everything in connection with the business." He is to get "entire possession and control" of every thing pertaining to the business. For the interest thus purchased, he agrees to pay $7,250 as follows: "$4,000, in cash; $1,000, on the first day of October; $1,000, on the first day of November; $1,000, on the first day of December, 1866, and $250 on the first day of January, 1867, time payments to be made in notes, satisfactorily indorsed or secured." Mehlhop is to pay all the debts of the firm. When Mehlhop carries into effect his part of the contract (gives the notes and gets them secured), a notice of dissolution is to be published, and Murdock is to surrender possession of every thing relating to the business.

When the partners concluded to separate, each undoubtedly knew the state of the personal accounts of the other as well as his own. The account now in controversy was on the books of the firm. What, if any thing, was the amount of the account against the defendant, does not appear. The last contract is not only one dissolving the firm, but it is evidently on its face a settlement of the affairs of the firm. The defendant, in effect, says to the plaintiff, "if you will go out, I will take all the property, pay all the debts, and pay you $7,250 for your interest, and this will close up the concern." The plaintiff accepted this proposition. The defendant's present position is, that he was not to pay $7,250, but that sum less $1,900. But such was not the contract. The contract was, that he was to pay the full sum of $7,250, and to pay it for the plaintiff's *interest* in the firm. If the firm, when in existence, could not have maintained an action against the plaintiff in respect to this $1,900, then it is plain that the defendant cannot now do so. But even if it could have done so, it does not follow that the defendant has the same right, for all

the firm business, and, presumptively, this with the rest, was settled by the contract of the parties made at the time of the dissolution.

The parties must be supposed to be reasonable men, and to act as reasonable men would act under like circumstances. See the improbable results to which the defendant's view leads. According to his theory, he owes the plaintiff not $7,250, but that sum less $1,900, and yet he agrees to pay him the full sum of $7,250 (part of which sum is made up of the $1,900 in suit, which, on defendant's theory, then "stood due"); he pays the plaintiff $4,000 in cash, and says nothing (so far as the record discloses) about the $1,900 then due him; gives secured notes for the balance and does not deduct the $1,900 the plaintiff owes him, or obtain or require security therefor.

Affirmed.