**[No. 3876.]**

### Cobb v. Benedict.

1. PARTNERSHIP—DISSOLUTION—ASSUMPTION OF LIABILITIES.

Where a partnership is dissolved by one partner selling to his copartners all his interest in the business and assets of the firm, it is competent for them to contract as between themselves who shall assume the liabilities of the partnership, and if the contract is silent on the question it will be inferred that the purchasing partners assumed the payment of the debts of the partnership.

2. SAME—ACCOUNTING—CREDITS.

Where a partnership is dissolved by a partner selling all his interest in the business and assets of the firm to his copartners at a certain price, in the absence of any agreement to the contrary, it will be presumed that all former accounts between them growing out of and connected with the partnership transactions are adjusted and settled, and it will be assumed that a credit standing on the books in favor of the selling partner was included in the settlement. But such credit may be shown to have been excepted by express contract from the sale.

3. SAME—INTEREST.

Where a partnership is dissolved by one partner selling to his copartners his interest at a fixed cash sum, an unpaid balance of the purchase price will draw interest at the legal rate from the date of the transaction.

*Error to the District Court of Arapahoe County.*

THE parties to this action, with one Wilson, were formerly engaged in business as partners. Benedict claims that October 1, 1891, his copartners purchased his interest in the firm, for which they agreed to pay him the sum of $10,000 and other considerations. He brought an action to recover the balance of the money consideration, basing his right thereto upon the foregoing statement, and claims that such balance is the sum of $2,500. The defendant Cobb alone answered, by which he tendered (1) the legal defense of payment; (2) the equitable defense that the partners have never settled and adjusted their partnership affairs as between each other, and prays for an accounting. The averments upon which these defenses are based are denied by replication. The issues thus formulated were submitted to a jury. The evidence of Benedict was to the effect, that Cobb and Wilson purchased his entire interest in the partnership business, and assumed all the obligations of the firm. When this transaction occurred there was standing to his credit on the books of the firm the sum of $3,723.48. This item consisted of the balance of his share of the profits of the business, which had been divided and placed to his credit, and money belonging to him individually, for which he had been given credit on the books of the firm. Regarding this credit he stated, in substance, that when the sale of his interest was made, it was distinctly understood, between Cobb and himself, that he reserved the privilege of withdrawing that sum, As to the agreement of purchase, the statement of Wilson is, that the subject of Benedict's liability, as between themselves, for the old firm debts, was not mentioned. He also states he did not understand that Benedict's individual account was included in the purchase. Cobb states in substance, that when the agreement of purchase was made, nothing was said about Wilson and himself assuming the then existing liabilities of the firm. On the subject of Benedict's individual account, he says that he never disputed his right to withdraw the sum it represents, provided it was collected from the assets of the old firm.

Plaintiff received a sum largely in excess of $10,000, $7,500

of which he applied on the purchase price for his interest in the assets and business of the firm, and the remainder upon the account standing to his credit at the time of the sale. These payments were made at different times, and in different amounts. As to one of $2,500, it is claimed that when he requested a payment at the time this was made, he asked for the balance of the purchase price. The only evidence on this subject is his own, which, when analyzed, is to the effect that he asked for the balance of his account, which, according to his claim, included the balance of the purchase price and the amount due him on his private account. Of this sum, he applied $2,000 on the latter, which discharged it in full, and the remainder on the purchase price.

Counsel for Cobb requested the court to instruct the jury to the effect that Benedict was not exonerated from bearing his proportion of the liabilities of the firm as between each member, unless it was expressly agreed between the partners that he should be. This instruction was refused. The court directed the jury that "if one partner sells to his co-partners his interest in a partnership for a certain consideration, and nothing is said further than that, he is not liable to his partners for the debts of the concern." The jury returned a general verdict in favor of plaintiff, and also a special verdict from which they found, as a fact, that Benedict, by the terms of the sale of his interest in the business of the firm, did not transfer his private account then standing to his credit. From a judgment on the verdict, defendant Cobb brings the case here for review on error. The principal errors assigned may be all considered under one head, namely, the giving and refusal of instructions noted. It is also claimed that interest should not have been allowed upon the balance of the account.

Mr. W. C. KINGSLEY and Mr. W. J. MILES, for plaintiff in error.

Mr. ALFRED MULLER and Mr. A. W. WEIL, for defendant in error.

MR. JUSTICE GABBERT delivered the opinion of the court.

The main question between the parties is, what was their contract, either expressly or by implication, with respect to the assumption of the liabilities of the firm by Cobb and Wilson at the time they purchased the interest of Benedict? Incidentally, there is also presented for determination, what their contract was with respect to the account standing to the credit of Benedict on the books of the firm at the time of such purchase. Upon the determination of these questions the rights of the parties principally depend. In determining the main question, we will eliminate, for the present, the consideration of any arrangement which they may have made regarding the account of Benedict.

It is urged and many authorities are cited in support of the uncontrovertible proposition, that one partner, by arrangement with his copartners, cannot shield himself from liability to creditors created while a member of the firm. This case, however, does not present that question. We are not called upon to decide how the agreement of sale affected Benedict as to the then existing creditors of the firm, but what their rights are as between each other, under that agreement. The evidence of Benedict is to the effect, that Cobb and Wilson assumed all liabilities of the firm, as part of the consideration of the purchase of his interest. If this were the only testimony on the subject, we need go no further in discussing this proposition, because the question of how the liabilities of the firm should be discharged by the partners as between each other, upon dissolution, is one which they can arrange between themselves by an express contract. *Tootle v. Clark*, 4 Colo. App., 111. According to Benedict's statement, that was what they did. Therefore, if their agreement embodied the terms and conditions which he asserts, there could be no doubt, so far as the payment of the balance of the $10,000 is concerned, but that he would be entitled to recover without respect to what the condition of the affairs of the old firm might be, after disposing of all its assets, and discharging its liabilities.

The next question presented is, what contract does the law imply in regard to the assumption of the liabilities of the firm by Cobb and Wilson, according to their version of what the terms of the contract of purchase were. Wilson and Cobb both testified that nothing was said by either of the partners about the assumption of the liabilities of the firm at the time they purchased the interest of Benedict. The interest of a partner in the assets of a firm of which he is a member consists of his portion of the residue left after payment of the liabilities of the firm, and the adjustment of their partnership claims against each other. 1 Bates's Partnership, § 180; 17 Ency. Law (1st ed.), 964; *Douglas v. Winslow*, 20 Me. 89; *Lambert v. Griffith*, 50 Mich. 286.

In determining the value of Benedict's interest, all the parties must have adopted this rule of law, in ascertaining that value. The sale operated as a dissolution of the partnership. The interest of Benedict in the assets was transferred to Cobb and Wilson. If nothing whatever was said on the subject of the discharge of the then existing liabilities of the firm, all must have contemplated, according to the statement of Cobb and Wilson, that they were to discharge such liabilities. They received the assets. From that source they would expect to discharge the liabilities. It was Benedict's interest in these assets, after the debts were paid, which they purchased. Having assumed the entire control of the property of the firm, and agreed to pay Benedict a sum certain for what, in their judgment, his net interest was worth, it was, in effect, an accounting between the members of the firm of partnership matters, from which it would naturally be inferred that the purchasing partners assumed the firm debts. Thereafter the rights of the parties would be governed by their contract of transfer, and no partnership matters were in issue, because, as we have noticed, the sale operated as a dissolution of the partnership, and impliedly adjusted all partnership matters between the members of the firm. *Clark v. Cass*, 45 Ill. App. 469; *Edens v. Williams*, 36 Ill. 252.

On this branch of the case we conclude, that where one

partner sells his entire interest in the assets and business of a firm to his copartners, for an agreed consideration, and nothing is said regarding the liabilities of the partnership, the presumption is, that the purchasing partners, as between themselves and the one retiring, assumed such liabilities. The trial judge correctly instructed the jury on this subject.

Counsel for plaintiff in error contend that if one partner retires with the consent of his copartners, there is an implied promise on the part of the latter to pay the debts of the firm, and save the one retiring harmless only to the extent of the assets of the firm. In support of this proposition, Parsons on Partnership (3d. ed) *409, is cited. An examination of the cases which the author cites as supporting his text, discloses that the facts in the cases in which the above rule has been announced, are entirely different from those in the case at bar, in this respect—that the retiring partner had not sold his interest in the assets of the firm to those remaining, but to a third party, with their consent. That, of course, would only make them responsible for the debts of the firm to the extent noticed, because the remaining partners were not parties to such sale, nor would such a transaction have the effect of an adjustment of partnership matters, as between the members of the firm.

The next, and incidental, question is, what the parties agreed upon regarding the account standing to the credit of Benedict at the time of the sale of his interest. The law unquestionably is, that where one partner sells his interest in the assets of a firm to a copartner, in the absence of any agreement to the contrary, it will be presumed that all former accounts between them, growing out of, and connected with, partnership transactions, are adjusted and settled. This applies to debits as well as credits. 2 Bates's Partnerships, § 629 ; *Norman v. Hudleston*, 64 Ill. 11 ; 17 Ency. Law, 1109.

Such accounts, however, may be the subject of express contract as between the partners. According to the testimony of Benedict, he was to have the right to withdraw the amount of his private account. Wilson states that they did

not purchase the individual account of Benedict. On this subject Cobb states nothing further than to the effect that Benedict was not to be paid the amount of his private account unless it was collected from the assets of the firm. It appears that, as between themselves, the amount of this account was due Benedict as his share of profits made previous to the dissolution, and for individual moneys of which the firm had received the benefit. According to his statement, he was to receive the amount of this account over and above the purchase price agreed upon. The jury found, as a matter of fact, that he did not transfer his private account by the terms of the sale. The evidence certainly warranted this finding. There was a sum largely in excess of $10,000 paid Benedict, which could not have been paid for any other purpose, except to apply on this private account; and as the evidence fully sustains the claim of Benedict that this account was the subject of an express agreement between himself and copartners, it is not necessary to discuss the question further. It only became important in view of the fact that Cobb had pleaded payment of the purchase price, and that part of the payments made, according to the testimony of Benedict, had been applied upon this private account. As his copartners agreed to pay this, he had the right, in the absence of directions to the contrary, to make this application, and it left the balance due him on the purchase price as found by the jury.

Section 2252, 1 Mills' Ann. Stats., provides that creditors shall receive interest on money due on accounts from the date when the same became due. By the terms of the sale, the purchase price was to be paid in cash. Benedict was also to receive from Cobb and Wilson at the same time, the amount due him as shown by the books of the firm. Each of these items became due on the date this arrangement was effected, and therefore, drew interest at the legal rate from that time. The judgment of the trial court is in all respects correct, and it is, therefore, affirmed.

*Affirmed.*