## HASSELMAN ET AL. v. DOUGLASS ET AL.

PARTNERSHIP.—*Sale of One Partner's Interest.—Indebtedness of Such Partner to Firm.*—A. and B. being partners, the former owning an undivided five-sixths interest, and the latter an undivided one-sixth interest in the property of the firm, A., by a written agreement, sold his said interest to C., being the undivided five-sixths of certain specified property "and generally all property of every name, or kind, or description, belonging or

appertaining to " said firm, with all the interest of A. in all notes and book accounts belonging to said firm, C. paying therefor a certain sum and giving his notes to A. for a balance of the purchase-money, and agreeing to assume and save A. harmless from " all debts, liabilities and contracts of " said firm, growing out of or connected with its partnership business, whether such debts and liabilities appeared on the books of the firm or otherwise ; it being agreed that said sale embraced the interest of A. " in all assets of every kind belonging to said firm and appertaining to said partnership business."

*Held*, in an action brought by A. against C. on said notes given for purchase-money, that, in the absence of fraud or warranty as to the interest of A., said sale did not transfer to C. as assets of the partnership a debt due to the firm from A. as a partner, not appearing on the partnership books ; and that such indebtedness of A. to the firm could not constitute a set-off or counter-claim in such action on said notes, though at the time of the action the debts of the firm had been paid, and the assets had been divided and the business settled between B. and C., and B. had received his share of said indebtedness of A. to the firm.

From the Marion Superior Court.

*A. G. Porter, B. Harrison* and *C. C. Hines,* for appellants.

*C. Baker, O. B. Hord, A. W. Hendricks* and *W. S. Barkley,* for appellees.

BIDDLE, C. J.—By this action the appellees, Samuel M. Douglass and James G. Douglass, sought a foreclosure of a mortgage given by appellants, L. W. Hasselman and W. P. Fishback, to secure the payment of certain notes specified in the mortgage, and the performance by Hasselman of an agreement made by him with the appellees and Mr. A. H. Conner.

The appellants answered in seven paragraphs. A general denial was replied to the first, second and fifth paragraphs of the answer, and demurrers were sustained to the third, fourth, sixth and seventh. The cause proceeded to final judgment at special term in the court below, and the judgment was affirmed at general term. From that judgment of affirmance this appeal is brought.

A reversal of the judgment is asked solely upon the

ground that the court erred in sustaining demurrers to the third, fourth, sixth and seventh paragraphs of the answer. All other questions are expressly waived in the argument of counsel for appellants.

The third paragraph of the answer, answering as to the sum of twenty thousand dollars and by way of cross bill, admits the execution of the notes, mortgage and written agreement, avers the joint interest of Mr. Fishback in the subject of the contract; that the firm of Douglass & Conner was composed of the plaintiffs and Alexander H. Conner and William R. Holloway, Conner and Holloway respectively owning an interest of a sixth in the firm, and each of the plaintiffs a third. It alleges that by said agreement Hasselman, for himself and Mr. Fishback, was entitled to five-sixths of all the assets of the firm, including all its credits and moneys owing to it, whether from the partners among themselves or from strangers; that at the time of the sale the two Douglasses and Conner had each a private account with the firm of Douglass & Conner, which accounts were exhibited to Hasselman and Fishback, the state of which then appeared to be this: James Douglass owed the firm eight hundred and fifty-five dollars; Conner, three hundred and thirty-one dollars and eighty-six cents; Holloway, two hundred and seventy-seven dollars and three cents (since paid); and Samuel Douglass had a credit due him of three hundred and fifty-two dollars and forty-six cents; that Hasselman and Fishback, in discharge of the obligation assumed in the written agreement to pay the debts of the said firm, paid to Samuel Douglass said balance so appearing to be owing to him, and that James Douglass and Conner paid to them and Holloway the balance, as shown by the books to be owing by them to said firm; that the books did not show the true state of the accounts of the two Douglasses and Conner with the firm; that, on the contrary, James Douglass had received a large sum of money belonging to the firm, viz., seventy-five thousand five hundred and ten dollars and forty-four cents, which had not been charged up to him on the partnership

books, and of which twenty-four thousand dollars was owing by him to the firm; that Samuel Douglass and Conner had each received of the partnership assets large sums, viz., the former seventy-eight thousand six hundred and fifty-four dollars and twenty cents, and the latter twenty-six thousand one hundred and thirty-two dollars and forty cents, which they had never reported, and which had not been charged against them on the books of the firm, of which Samuel Douglass owed the firm ten thousand dollars, and Conner owed five thousand dollars. Bills of particulars were filed exhibiting the sums so collected, and also a statement of the private account of Holloway with the partnership. The paragraph then alleges, that if the private accounts of the partners were correctly adjusted, there would be a large sum coming to Hasselman and Fishback—from the two Douglasses, twenty-four thousand dollars, and from Conner, five thousand dollars. The paragraph then states, that after the purchase by Hasselman and Fishback of the interest of the Douglasses and Conner, Conner, having been required to account for his one-sixth interest in said moneys, paid to Holloway a sum which was accepted in full of Holloway's share thereof, but that the two Douglasses and Conner have failed and refused to account with Hasselman and Fishback, and that their share in the amount due upon said several private accounts remains wholly unpaid. They allege, that upon a settlement the Douglasses owe them twenty thousand dollars, which ought to be credited upon the notes in suit. Holloway and Conner are made parties to the cross bill and required to answer. Prayer for an accounting, and that the amount due to Hasselman and Fishback be credited upon their notes.

The fourth paragraph of the answer is pleaded as a set-off as to twenty thousand dollars of the debt named in the complaint. It admits the execution of the notes, mortgage and written agreement, and alleges the joint interest of Mr. Fishback in the subject of the contract, as in the preceding paragraph. It alleges also a performance by Hasselman and

Fishback of the conditions of the agreement, except payment of the notes, which they have, it alleges, refused to pay, because the Douglasses have refused to credit and allow them their just set-off. It states that, by the terms of the agreement, Hasselman (for himself and Fishback) became owner of five-sixths of all the property and assets of the firm of Douglass & Conner, including all the credits due the firm, as well from the partners on their private accounts as from strangers; that plaintiffs represented to them after the sale that the firm owed Samuel Douglass three hundred and fifty-two dollars and forty cents on his private account; that James Douglass owed the firm eight hundred and fifty-five dollars; and that they, believing these representations, paid to Samuel the sum represented to be due to him, and received from James the sum represented to be owing by him; that these representations were false, as plaintiffs knew, there being really due from them to the firm, for firm moneys collected and received by them and appropriated to their joint use, twenty-four thousand dollars. The paragraph further alleges that Hasselman and Fishback have paid all the debts of the firm, and that all the assets have been divided and the business settled between Holloway and them, and that Holloway has received his full one-sixth share of said debts due from the Douglasses. Hasselman and Fishback then offer to set off against the claim of plaintiffs the sums alleged to be due from them as aforesaid, and also three hundred and fifty-two dollars and forty cents paid to Samuel M. Douglass.

The sixth paragraph of the answer is also pleaded by way of set-off as to twenty thousand dollars, part of the debt sued for. It admits the execution of the notes, mortgage and agreement, and the joint interest of Mr. Fishback in the subject of the contract, as in the preceding paragraph; it avers that it was the intent of the agreement that Hasselman (for himself and Fishback) should, in consideration of the money paid and agreed to be paid to plaintiffs and Conner, and of their consent to pay all the debts of the firm of Douglass &

Conner, have five-sixths of all the assets of the firm which might, if the firm had continued, have been made available to pay debts or to divide among the partners; that it was mutually understood by the Douglasses and Hasselman and Fishback that the agreement transferred to them five-sixths of any debts which were owing by the Douglasses jointly, or by Conner, to said firm, and that Hasselman and Fishback, on the other hand, assumed to pay, with Holloway, any debts which said firm was owing to the plaintiffs jointly or severally, or to Conner; that, in pursuance of this mutual intent, Samuel Douglass presented a claim against the firm of Douglass & Conner for three hundred and fifty dollars, which defendants and Holloway paid to him; James G. Douglass represented that he owed the firm eight hundred and fifty-five dollars, and no more, and paid it to defendants and Holloway; Conner represented that he owed the firm three hundred and thirty-one dollars and ninety-six cents, and no more, and paid it to defendants and Holloway. The paragraph then avers that, in truth, at the time of the sale, the plaintiffs had in their possession twenty-four thousand dollars in money of the property and assets of the firm, which they held in trust for the firm, and five-sixths of which, by the contract, passed to and became the property of Hasselman and Fishback; that they still retain the money, and have, though requested, failed to pay, etc.; that Hasselman and Fishback, with Holloway, have paid all the firm debts, and the Douglasses have paid to Holloway a sum which he accepted in full of his share of the moneys held by them, and that the five-sixths thereof is due from plaintiffs to Hasselman and Fishback.

The seventh paragraph admits the execution of the notes, mortgage and agreement, and alleges the joint interest of Mr. Fishback in the subject of the contract and the intent of the parties, as in the preceding paragraph; that, at the time of the sale, there was deposited with the Douglasses twenty-four thousand dollars of the moneys of the firm of

Douglass & Conner, which was held by them for the current use of the firm, was a part of its assets, and had never been set apart as profits, but was liable for the debts of the firm, and, as such assets, five-sixths passed to Hasselman and Fishback; that the Douglasses still retain the money, and refuse, though requested, etc., to pay, etc.; that Hasselman and Fishback, with Holloway, have paid all the firm debts, and that the Douglasses have paid to Holloway a sum which he has accepted in full of his share of said moneys held by the Douglasses, and that five-sixths of said sum, viz., twenty thousand dollars, is due, etc.

Inasmuch as the sufficiency of the paragraphs of the answer in question will mainly depend upon the proper construction to be placed upon a written agreement filed with and made a part of the complaint, we set it forth in full, as follows:

"This agreement, made this 7th day of June, A. D. 1870, between Samuel M. Douglass, James G. Douglass and Alexander H. Conner, of the first part, and Lewis W. Hasselman, of the second part: whereas the parties of the first part and William R. Holloway are joint proprietors of all the property, real and personal, appertaining to the printing and publishing establishment commonly known as the 'Journal office,' and are partners in carrying on the business of the same, under the firm name of Douglass & Conner, the interest of the said parties of the first part in said property, business and partnership being the undivided five-sixths thereof, and that of said Holloway being the remaining one-sixth; and whereas said parties of the first part have this day sold all their said interest to the party of the second part, on the terms and conditions hereinafter mentioned; now, therefore, this agreement witnesseth:

"1. That the said parties of the first part have sold, and agree to convey to said party of the second part, the undivided five-sixths of all the real estate appertaining to said 'Journal office,' and also the undivided five-sixths of eighty acres of land lying in the State of Missouri.

" 2. The undivided five-sixths of all the fixtures and machinery, types, presses, and binders' tools and presses, stereotype foundry and fixtures, and all stock of every name or kind on hand, and all ordered, but not yet received, including paper and binders' leather, inks, etc., and generally all property, of every name or kind or description, belonging or appertaining to said ' Journal office,' or to said firm of Douglass & Conner, including the good-will of the daily and weekly Journal newspapers.

" 3. Also, all their interest in all notes and book accounts belonging to said firm of Douglass & Conner, and in all work now in progress in said printing establishment of said firm, and in the subscription lists of the ' Indianapolis Daily Journal' and ' Weekly Indiana State Journal.'

" 4. Also, all the rights and interest of the parties of the first part in the 'Western Associated Press dispatches.' Also, all partners' liens they have on the said partnership property and assets as between them and their said partner.

" 5. In consideration of all which, the said party of the second part has agreed to pay to the said parties of the first part the sum of one hundred and five thousand dollars, as follows: one-fourth thereof, being twenty-six thousand two hundred and fifty dollars in cash down, one-fourth in one year, one-fourth in two years, and one-fourth in three years from this date, said deferred payments bearing interest at the rate of seven per centum per annum, and to be secured by notes of the party of the second part, waiving valuation laws.

" 6. In further consideration of the premises, said party of the second part hereby promises and agrees to assume all debts, liabilities and contracts of the said existing firm of Douglass & Conner, growing out of, or connected with, the business of said printing establishment, including a certain subscription of one thousand dollars to the stock of the New Hotel Company, to the full extent to which the said parties of the first part are or may become liable to pay the same; that is to say, the said party of the second part agrees to

assume and pay the same in the same manner and to the same extent as he would be liable to pay the same if he, instead of the said parties of the first part, composed, together with the said Holloway, the said existing firm; and he, said party of the second part, promises and agrees to save said parties of the first part harmless from all such debts, liabilities and contracts of said existing firm. .

"The parties are not, at this time, prepared with an exact schedule of said debts, liabilities and contracts; and it is agreed and understood that the party of the second part has had, and has, access to the books of said firm of Douglass & Conner and that he assumes the same, whatever they may be.

"[The parties of the first part guaranty that all the debts so assumed appear on the books of the parties of the first part, except said hotel subscription and small current bills not yet sent in, but that the amount of said current bills not yet sent in and entered does not exceed three hundred dollars.*]

"7.  It is further agreed that the said party of the second part shall execute, or cause to be executed, and deliver concurrently herewith, to the party of the first part, a mortgage on sufficient real estate to secure the payment of the aforesaid three notes for purchase-money, and to indemnify the parties of the first part against all liabilities as aforesaid, as members of the existing firm of Douglass & Conner.

"8.  The real estate, of which the undivided five-sixths was sold as aforesaid, is the following: one parcel, conveyed to said Douglass & Conner by the trustees of the First Presbyterian Church of Indianapolis, January 15th, 1866, and recorded in Town Lot Records No. 29, page 168, of Marion County Deed Records.   Also, two parcels, conveyed by William A. Morrison and wife to same, June 28th, 1866, and recorded in same book, page 439.   Also, eighty acres, conveyed to said Douglass & Conner and Holloway, Decem-

---

\* This clause of sixth paragraph, in brackets, was erased.

ber 17th, 1867, recorded in Record A, pages 305 and 306, in Reynolds county, Missouri, records.

" 9. The deeds for said real estate to be warranty deeds, excepting an incumbrance of seven thousand five hundred dollars, being a mortgage lien upon that portion of the real estate situate in Indianapolis, that being a portion of the indebtedness of the existing firm assumed by the party of the second part as aforesaid, and excepting also the one-half of all taxes on the real estate for the current year.

" 10. Deeds to be delivered, cash payment made, and possession given on Saturday, June 11th, instant.

" 11. It is agreed that all that portion of the sixth above clause or paragraph after the words 'the parties of the first part' shall be stricken out, and that the same is erased before the execution of this contract, and that the party of the second part assumes and promises to pay all said debts, liabilities and contracts, as the same may exist at the time he takes possession, whether the same appear on the books of the said firm of Douglass & Conner or not.

" 12. And it is further agreed that the above sale to the said party of the second part shall embrace the interest of the parties of the first part in all assets of every kind belonging to said firm of Douglass & Conner, and appertaining to said partnership business, including so much of a certificate of sheriff's sale, by the sheriff of Fayette county, Indiana, as represents a debt of about two thousand dollars of Lafayette Develin to said Douglass & Conner, but no further interest therein.

" If the premises shall be redeemed, that portion of the redemption money, with its accrued interest, shall go to the party of the second part.

" If not redeemed, the parties of the first part shall, at their option, pay to the party of the second part the amount of said Develin's debt and interest, or convey by quitclaim deed a proportionate part of the property so bought at sheriff's sale to the party of the second part.

"Witness our hands and seals the day and year aforesaid.

"SAMUEL M. DOUGLASS.

"JAMES G. DOUGLASS.

"ALEX. H. CONNER.

"L. W. HASSELMAN.

Whether this agreement transfers to the vendees, as assets of the partnership, any interest of the vendors in the accounts due from them as partners to the firm, is the question upon which the decision of this case must depend.

We are of opinion that the private accounts against the Douglasses and Conner, in favor of the firm of Douglass & Conner, were not such partnership assets as would pass, by the agreement, to Hasselman. These accounts represented what had been drawn out of the firm by the partners, and not debts due to the firm. Hasselman bought the interest which the three partners had in the partnership assets at the time of the purchase, not the assets they had previously drawn out of the firm; and the more they had drawn out the less would be the interest which Hasselman would take by his purchase. Besides, only the creditor can sell a debt; the debtor has no interest in it which he can transfer. In these accounts, the Douglasses and Conner were the debtors; the firm of Douglass & Conner was the creditor. The firm sold nothing to Hasselman; it was a sale by the three partners of their undivided individual interests. They could not become their own creditors.

As to the other choses in action due the firm, they sold their right in them as creditors, not as debtors. Each one sold his interest in the firm, which would be the share remaining to him after the payment of the partnership debts and the final settlement of the partnership affairs. A partner has no transferable interest in the property of a partnership to which, after its ultimate adjustment, he is indebted.

The case of *Van Scoter* v. *Lefferts*, 11 Barb. 140, is in point. Lefferts and Smith were partners in selling goods, under the style of Smith & Lefferts. Lefferts sold all his interest in the partnership property and effects to Hartshorn,

who agreed to pay Leffert's proportion of the partnership debts due from the firm of Smith & Lefferts. . Nothing was said at the time about any account on the books against Lefferts. Hartshorn subsequently discovered that there was an account against Lefferts upon the books of Smith & Lefferts, for goods taken by and charged to him, amounting to three hundred and one dollars. Smith subsequently transferred his interest in this book account to Hartshorn, and Hartshorn transferred it to Van Scoter, who thus became the owner of the entire account.

Johnson, J., who delivered the opinion of the court, says:

"It seems to me quite manifest that in no view of this case could the plaintiff" (Van Scoter) "recover the whole of this account. Hartshorn never had any interest in this account till Smith assigned him his interest. Hartshorn purchased only the interest the defendant" (Lefferts) "had in the firm at the time of the sale, and not that which he had previously drawn from it. It would be a legal absurdity to say that a person sold a debt against himself to another. The debtor has no interest in the debts against him, which he can transfer. The property and interest in a demand belongs wholly to the creditor, and the debtor has no authority or control over it.

"Assuming that this three hundred and one dollars had been taken from the joint stock, before the sale, what was then the state of the case as between the defendant and his partner Smith? If their interests were equal, the defendant would be liable to pay Smith just one-half the amount, and would be entitled to retain the other, he being joint owner of the property taken. Hence it follows that if Hartshorn was really deceived as to the existence of this account against the defendant for goods, the interest which he acquired by his purchase was just one hundred and fifty dollars and fifty cents less than what he expected or supposed it to be. He took what interest the defendant then had, and no more. For this amount the defendant may be liable in some other form of action, as for fraud in the sale, or upon a warranty as

to the extent of his interest; but it is clear that no such interest was acquired by Hartshorn by his purchase. He took by that precisely the interests and rights which the defendant would have been entitled to on a settlement and adjustment of all the partnership matters between him and Smith at that time, and no other or greater."

The vendees, by virtue of the agreement, can make just the same settlement with the firm of Douglass & Conner as the vendors could have made if they had not made the sale.

In the case before us there is no warranty, and no fraud sufficiently alleged, not even an averment that the appellants, at the time of the sale, were ignorant of the facts now complained of. They bought certain interests, the amount of which was unascertained at the time, with a full knowledge of its uncertainty. We can perceive nothing in the record of which they have a right to complain. *Abey* v. *Bennett*, 10 Ind. 478; *Eakin* v. *Fenton*, 15 Ind. 59.

The judgment is affirmed.

DOWNEY, J.—I cannot concur in the conclusion reached by the majority of the court in this case, as stated in the foregoing opinion.

It is stated in the majority opinion, that the private accounts of the Douglasses and Conner, in favor of the firm of Douglass & Conner, were not such partnership assets as would pass by the agreement to Hasselman. The opinion then speaks of the accounts as assets they had drawn out of the firm, and not debts due to the firm, and states that Hasselman bought the interest the three partners had in the firm, and not what they had previously drawn out; that only the creditor can sell a debt, and that the debtor has no interest that he can sell, etc.

I do not understand the case to be as thus stated. The idea that the Douglasses and Conner, or any of them, had withdrawn the amounts in question from the capital stock of the company nowhere appears; but in every paragraph of the answer in question, the amounts are stated as so much due

from them to the firm, and constituting part of the assets of the firm, and I think it cannot be successfully denied that they were liable to the firm for every dollar that they thus owed it.

When Hasselman purchased the interests of three of the partners in the partnership property, he did not become the owner of any specific part of the property, but he did become the owner of whatever the ultimate balance due his assignors would have been on a full and final settlement and adjustment of the affairs of the firm; and in making this adjustment, each partner was liable and bound to pay to the joint concern the full amount in which he was indebted.

In speaking of the interest which would pass by a sale or assignment by one of the partners, in *Smith* v. *Evans*, 37 Ind. 526, this court said:

" That interest consisted not of one-third of the partnership property, but of one-third of whatever might be the ultimate balance, after payment of the partnership debts and the settlement of the accounts between the partners."

The ultimate balance was what Hasselman purchased, and to ascertain and fix that balance the assigning partners were liable to account for the amounts which they respectively owed the firm. It is a misconception of the nature of the transaction to speak of it as a sale by a debtor of his own indebtedness. The indebtedness was to the firm, and Holloway, the owner of the share of the partnership property not sold, had an interest in it which it was not in the power of his co-partners to dispose of so as to affect his interests or the right of the firm to demand the payment of the same.

That Hasselman acquired an interest in all debts due the firm, is very clear from the language of the instrument by which the transaction was evidenced.

The second clause embraces not only all of the designated articles of property, but contains the further words, as follows: "and generally all property, of every name or kind or description, belonging or appertaining to said Journal

office, or to said firm of Douglass & Conner, including the good-will of the daily and weekly Journal newspapers."

It would be difficult to use language more general and comprehensive than this.

The fourth clause embraces "all notes and book accounts belonging to the firm." There can be no doubt but that the appellant became the owner of the interest of his assignors in all choses in action due to the firm.

The practical construction placed upon the contract by the parties shows that this was their understanding of it, else why would James Douglass and Conner have paid the amounts which they acknowledged they owed the partnership, after the sale of their shares. If the sale of the shares of James Douglass and Conner to Hasselman operated, as supposed by the majority of the court, as an extinguishment of their debts to the firm, why did they, after the sale and assignment, pay the amounts which they admitted they owed the firm? Has-selman agreed to pay the debts of the firm, or, at least, pur-chased the assets subject to the debts, and he had a right to insist that the debts due to the firm, whether owed by the members or by third persons, should be paid, to make a fund out of which to pay its debts. As he was bound to pay the debts, he was entitled to collect, through the firm, the assets of the firm. He had a right to claim for the firm, from the Douglasses and Conner, the whole amount which they owed the joint concern; and if they did not pay it, they were lia-ble to be sued by the firm for what was actually due from them.

If the affairs of the firm were yet unsettled, Hasselman could not now use this claim as a set-off or counter-claim in this action, but he would have to work out his claim through the firm. But the answers show that the debts of the firm are all paid, and that the Douglasses and Conner have paid to Holloway what was due him of these debts, which leaves no one except Hasselman having any interest in them. Under these circumstances, he can enforce the payment of them, to the extent of his interest in the assets of the firm, as

perfectly and effectually as it could have been done in the name of the firm.  *Briggs* v. *Daugherty,* 48 Ind. 247, and cases cited.

We see no objection to this growing out of the fact that the Douglasses and Conner owe different amounts.   In the accounting, each can be made to account for what he owes, and the court can not only adjust the claims as between the appellant and them, but as between the Douglasses and Conner themselves.

The opinion of the majority of the court is based on the case in Barbour, which I think is not enough in point to be an authority which ought to control our decision in the case before us.   It does not appear that in that case the assigning partner sold the notes, accounts and all property of every kind due the firm.   Nor does it appear, in that case, that the partnership debts had been paid.

In my opinion, the judgment in this case should be reversed.

PETTIT, J., concurs in the dissenting opinion.

Petition for a rehearing overruled.