RIDDELL, RESPONDENT, *v.* RAMSEY ET AL., APPELLANTS.

(No. 1,954.)

(Submitted October 17, 1904.  Decided December 1, 1904.)

*Partnership—Conversion of Firm Assets—Action by Partner—*
*Complaint—Sufficiency.*

A complaint alleged that plaintiff and defendants were partners, and that defendants withdrew a portion of the firm assets from a bank; and converted them to their own use; that thereafter defendants assigned all their interest in the partnership to plaintiff; and that on the settlement and dissolution of the firm the whole of the money so wrongfully converted was due and owing and belonged to plaintiff as a portion of his share. *Held,* that the complaint failed to state a cause of action, since defendants could not assign to plaintiff any right of action growing out of the misappropriation, and there was no allegation of an accounting; either in equity or by agreement, or that on such accounting the moneys converted were found to belong to plaintiff, the allegations that such moneys were owing plaintiff being a mere conclusion.

*Appeal from District Court, Silver Bow County; E. W. Harney, Judge.*

ACTION by J. A. Riddell against George L. Ramsey and another. From a judgment in favor of plaintiff, and from an order overruling a motion for a new trial, defendants appeal. Reversed.

*Messrs. Cullen, Day & Cullen,* for Appellants.

*Mr. John J. McHatton,* and *Mr. George F. Shelton,* for Respondent.

MR. COMMISSIONER CLAYBERG prepared the following opinion for the court:

This is an appeal from a final judgment and from an order overruling a motion for a new trial.

The complaint upon which the action is brought is as follows:

"Comes now the above-named plaintiff, and, leave of court first having been had and obtained, files this, his amended complaint, and for cause of action against the above-named defendants alleges:

"(1) That plaintiff is a resident of the county of Silver Bow, Montana.

"(2) That thé defendant Charles Suiter is now, and for a long time prior hereto has been, a resident of the county of Silver Bow, state of Montana.

"(3) That heretofore and during the years 1896 and 1897, this plaintiff, C. E. Roach, and Charles Suiter were copartners doing business as such in the state of Montana under the firm name of Riddell & Roach. That said copartnership was engaged in the erection and construction of the School of Mines building at Butte, Montana, for which it had secured the contract from the state of Montana through the state board of said School of Mines.

"(4) That at all the times hereinafter mentioned the defendant George L. Ramsey was the cashier of the Commercial National Bank at Bozeman, Montana, and as such cashier had supervision over the business of said bank, and over the paying out of all moneys which were paid out or withdrawn from the account of said copartnership, which was carried in said bank.

"(5) That it was agreed between this plaintiff, said Roach, and Suiter that all moneys belonging to the firm of said Riddell & Roach, and particularly all moneys which should be received by said copartners on account of the erection and construction of said School of Mines building under the contract aforesaid, should be kept and used by said copartnership for the purpose only of paying the cost of all labor and material necessary for the construction and erection of said School of Mines building, save that each of said copartners should be entitled to the sum of $125 per month out of the said copartnership money to defray his living expenses during the time while said School of Mines building was being erected, and until the same should be completed.

"(6) That it was agreed by and between this plaintiff and the said Roach and Suiter that all sums of money belonging to said copartnership of Riddell & Roach, and arising from said contract for the erection of said School of Mines building, or received by said copartnership on account thereof, or for the purpose of erecting said building, should be deposited in a bank to the credit of said copartnership of Riddell & Roach, and that the same, except the sum of $125, which was to be drawn by and paid to each member of said copartnership during the time when

said School of Mines building was in course of construction for the purpose of defraying his living expenses, should only be drawn therefrom or paid out on account of materials, supplies and labor necessarily procured, used and employed in the erection and completion of said School of Mines building. That said defendant Geo. L. Ramsey knew of said agreement between the plaintiff and his copartners, and with a full knowledge thereof solicited this plaintiff and said copartnership of Riddell & Roach to deposit the funds of said copartnership in the Commercial National Bank of Bozeman, Montana, and agreed that, if said moneys were so deposited, they should be kept in an account by said bank to the credit of Riddell & Roach for such purpose.

"(7) That during the time from on or about the month of July, 1896, to the month of March, 1897, the said firm of Riddell & Roach deposited with the said Commercial National Bank of Bozeman large sums of money belonging to it, and which were to be used for the purpose of paying for the materials and labor which were or might be necessary to be procured, used and employed in the erection of said School of Mines building, and for the living expenses of the said copartners, to-wit, the sum of $125 per month to each of them as aforesaid. · That all of the moneys which were deposited in said bank during the time aforesaid by said Riddell & Roach belonged to said copartnership in its said business of erecting and constructing said School of Mines building, and was to be used therefor, and that said defendant George L. Ramsey had full knowledge of the same, and of the agreement between this plaintiff and his copartners with regard to the use to be made of said sums of money.

"(8) That during the time when the money belonging to said copartnership was deposited in and was being deposited and kept on deposit in said Commercial National Bank of Bozeman, the defendants, Charles Suiter and George L. Ramsey, together with said C. E. Roach, and in pursuance of an agreement and scheme entered into between them to defraud the plaintiff of his rights in said copartnership and of said moneys, jointly engaged in

withdrawing large sums of money from time to time from said account, and converting the same to their own use. That said defendants and the said Roach so jointly withdrew from said account, and jointly converted to their own use, without the knowledge or consent of the plaintiff, and in fraud of his rights, the sum of $8,200, to the damage of the plaintiff in said sum. That no part of the same was applied to the payment of any material or labor furnished or employed in the erection of said School of Mines building, or on account of said partnership business, or on account of said sums of $125 per month which the said Suiter and Roach were entitled to use for living expenses; and that neither of said defendants or said Roach were entitled to any part of said amount so withdrawn and converted by them; and that, had said sum not been withdrawn and converted to the aforesaid use, the whole thereof would have remained to the plaintiff upon the dissolution of said partnership hereinafter alleged, and would have belonged to him free from any claim of right of said defendants or the said Roach.

"(9) Plaintiff alleges that said defendants and said Roach during all the time that they were withdrawing said money from said account and converting the same to their own use concealed the same from the plaintiff, and falsely represented to him that all moneys which had been deposited in said bank were being kept and used only for the purposes of said copartnership, as aforesaid, and that the whole amount which was paid out or which was being paid out or withdrawn from said bank, aside from the monthly allowance to the members of said copartnership, was paid out and was being paid out for labor and material necessarily employed, procured and used and to be used in the construction of said School of Mines building. That he relied upon such representations, and that by reason thereof, and by reason of the concealment of the conversion of said moneys by the defendants and said Roach, he was prevented from having any knowledge thereof until on or about the 20th day of January, 1898, and that by reason of the fraudulent acts, concealments and representations of said defendants and said Roach

he did not know of any sum or amount of said money having been converted by them to their own use until on or about said day.

"(10) That on or about the .... day of March, 1897, said copartnership was dissolved as to said C. E. Roach, and that on or about said day said C. E. Roach sold, assigned, transferred and set over unto the plaintiff all of his rights in and to said copartnership and in and to all of the property, claims, demands and rights of actions thereto belonging, and thereupon the rights of said Roach in and to said copartnership were fully determined and settled, and said copartnership fully dissolved as to him, and the plaintiff is now, and ever since said time has been, the owner and entitled to all of the rights of said Roach in and to said partnership, its business, property and assets. That thereafter the plaintiff and said Charles Suiter conducted the said copartnership business up until the 26th day of November, 1897, when, by mutual agreement between plaintiff and said Suiter, said copartnership was entirely dissolved, and thereupon said Suiter assigned and transferred to the plaintiff all of his rights in said copartnership and in and to all of the accounts, claims, demands, rights of action and property of every kind theretofore belonging thereto; and that this plaintiff is now, and ever since said time has been, the owner of all of the property, rights, claims, accounts and demands of every kind and description theretofore belonging to said copartnership, or in which said C. E. Roach and Charles Suiter had any interest as copartners. That said Roach and Suiter assigned to the plaintiff upon the termination or dissolution of said copartnership all rights of said copartnership in and to all moneys theretofore converted therefrom by said defendants and said Roach, as hereinbefore alleged. That at the time said sums of money were converted by said defendants and said Roach as hereinbefore alleged, and at the time of the dissolution of the said partnership and the settlement of its business and affairs between plaintiff and his copartners, the whole of said amount was in excess of the rights of said Suiter and Roach in said copartnership and in the money

and property belonging thereto.  That upon the dissolution of said copartnership its business and affairs were settled as between this plaintiff and said Roach and Suiter, and the whole of said sum of money so wrongfully converted as aforesaid was due and owing and belonged to this plaintiff as a portion of his individual share of said copartnership property and money.

"(11) Plaintiff alleges that said defendants and said Roach actively co-operated in the conversion of said sums of money, and jointly acted in diverting the same from the said copartnership and from copartnership uses, and jointly converted the same to their own use and benefit, and to the damage of said copartnership and this plaintiff; and plaintiff therefore avers that the defendants are indebted to him on account thereof in the full sum of $8,200.

"Wherefore he prays judgment against the said defendants for such sum, together with interest thereon, and for costs of suit."

Does this complaint state a cause of action against defendants?  From a cursory reading of the same, doubts would naturally arise as to whether it was intended to state a cause of action in assumpsit, for conversion, or for damages for the misappropriation of funds of the partnership by defendants and Roach by reason of a fraudulent conspiracy between them for that purpose.  But counsel for respondent have stated in their brief the theory upon which they rely for the sufficiency of their complaint, and therefore we shall consider only whether a cause of action is stated upon that theory.

Counsel for respondent say in their brief: "The right of the plaintiff to maintain this suit, as set forth in the amended complaint, is his personal right to recover damages in tort for the wrongs suffered by him individually in consequence of the fraudulent conspiracy of the defendants, and the acts done in pursuance thereof to the damage of the plaintiff.  The damage for which he seeks redress is to him as an individual,—is for torts committed against him as an individual.  It is the right of one who has suffered, through the wrongful acts of

others, to demand damages for the injuries done to him personally.    The defendants, conspiring together with others, defrauded the plaintiff out of a large sum of money.    The fact that plaintiff was a member of a copartnership of which Roach and Suiter were also members facilitated the carrying out of the conspiracy, and helped the conspirators to accomplish their design, which was to cheat and defraud the plaintiff.    But it was not a partnership wrong for which plaintiff asks redress. He does not sue as assignee of a partnership wrong.    The wrong is to him personally and individually, and that is the basis of his action."

One of the fundamental requisites of a good complaint in an action in tort for damages is that it must show by proper allegation that plaintiff was damaged by the acts of defendants complained of.    It is perceived that by this complaint it is alleged that Riddell (plaintiff), Roach and Suiter formed a copartnership under the firm name of Riddell & Roach to construct the School of Mines building at Butte, Montana, under a contract with the state of Montana.    There is no allegation that either copartner contributed any money or property to the copartnership, or that it had any assets except such as would arise in the performance of the contract for the erection of the building. The complaint further alleges that it was agreed between the copartners that these assets, when received, should be deposited with the Commercial National Bank of Bozeman, to be used only in payment for material and labor required in the erection of the building, except that each copartner might withdraw $125 per month for living expenses; that the firm deposited large amounts of money with this bank subject to the above agreement, of which defendant Ramsey had knowledge, and to which he consented; that defendants and Roach, through a fraudulent conspiracy, withdrew from these assets so deposited and misappropriated the sum of $8,200, and converted the same to their own use.    It is apparent that the injury complained of was damages resulting from this alleged unlawful withdrawal of a portion of the partnership assets.

What was the interest and ownership of each partner in the firm assets? "Every partner owns the whole partnership property subject to equal ownership of every other partner; and no one partner can make his own ownership of any part absolute, or relieve it from the incumbrances of the ownership of the others, without their consent. * * * But although no partner owns absolutely any part of the property, he has an interest in the whole." (Parsons on Partnership, Sec. 112.)

The individual interest of one partner in the firm assets can only be ascertained by a settlement of the partnership. (*Bopp* v. *Fox*, 63 Ill. 540; *Chandler* v. *Lincoln*, 52 Ill. 74; *Menagh* v. *Whitwell*, 52 N. Y. 146, 11 Am. Rep. 683; *Sindelare* v. *Walker*, 137 Ill. 43, 27 N. E. 59, 31 Am. St. Rep. 353.)

Such settlement can only be accomplished by agreement of the partners, or by an action in equity for an accounting settling their several interests. Plaintiff's injury, as above stated, is only claimed to arise from this alleged misappropriation. In order to be injured as an individual by this misappropriation, his complaint must show that he was the individual owner, or entitled to the possession, of the funds misappropriated at the time of the alleged misappropriation. The only allegations of individual ownership or right to possession of the funds alleged to have been misappropriated are found in paragraphs 8 and 10 of the complaint. In paragraph 8 it is alleged that neither the defendants nor Roach were entitled to any part of the money converted, and, had it not been converted, the whole thereof would have remained to plaintiff upon dissolution of the partnership, and would have belonged to him free from any claim of defendants or Roach. In paragraph 10 we find allegations to the effect that in March, 1897, Roach sold to plaintiff all his rights in and to the copartnership property, claims, demands and rights of action, and that the rights of Roach were fully settled and determined, and that plaintiff is the owner of all of Roach's right in the copartnership property; that on November 26, 1897, the copartnership was dissolved as to Suiter by mutual agreement between them, and Suiter transferred and as-

signed to plaintiff all his rights in the partnership and in and to all the accounts, claims, demands, rights of action and property belonging to such partnership, and that plaintiff is the owner of all the property, rights and claims theretofore belonging to the copartnership in which said Roach and Suiter had any interest as copartners; that Roach and Suiter assigned to plaintiff upon the termination and dissolution of the partnership all rights of said copartnership in and to all the moneys theretofore converted therefrom by defendants and Roach; that at the time of the alleged conversion and at the time of the settlement of its business and affairs between plaintiff and his copartners the whole of said amount was in excess of the rights of Roach and Suiter in said copartnership and in the money and property belonging thereto; that upon the dissolution of the partnership its business and affairs were settled as between plaintiff and Roach and Suiter, and that the whole sum of money converted was due and owing, and belonged to plaintiff.

Are these allegations sufficient to show that the plaintiff was individually the owner or entitled to the possession of the money alleged to have been misappropriated? From a reading of them one is led to believe that in the preparation of the complaint plaintiff's attorneys intended to rely upon an assignment and transfer to plaintiff by Suiter and Roach of all their rights of action in reference to the money alleged to have been misappropriated, or an assignment of all their rights in said fund. However, in their brief they distinctly say that they do not base plaintiff's rights upon such assignment and transfer. If they do not base plaintiff's rights upon such assignments or transfers, the allegations of the same in the complaint must be treated as surplusage. As a matter of law, plaintiff could not be vested with a right of action to recover the interests of Roach and Suiter in or to any of the funds so alleged to have been misappropriated by the assignment pleaded. According to the allegations of the complaint, Roach and Suiter are both guilty of misappropriation of copartnership funds. They therefore could not assign the right of action to recover such funds against them-

selves.  No person can transfer to another a right of action
against himself.  The right of action now claimed by plaintiff
is one based upon the fraudulent conduct of Suiter and Roach,
concurred in by Ramsey.  We cannot conceive how such right
of action could, in the first place, rest in Suiter and Roach, be-
cause no one can have a right of action against himself.  It is
absurd to say that Roach and Suiter could transfer to plaintiff
a right of action against themselves growing out of their own
fraud and misappropriation.  (*Hasselman* v. *Douglass,* 52 Ind.
252; *Van Scoter* v. *Lefferts,* 11 Barb. 140.)

In *Hasselman* v. *Douglas, supra,* the court said:  "We are of
opinion that the private accounts against the Douglasses and
Conner in favor of the firm of Douglass & Conner were not such
partnership assets as would pass, by the agreement, to Hassel-
man.  These accounts represented what had been drawn out of
the firm by the partners, and not debts due to the firm.  Hassel-
man bought the interest which the three partners had in the part-
nership assets at the time of the purchase, not the assets they had
previously drawn out of the firm; and the more they had drawn
out the less would be the interest which Hasselman would take
by his purchase.  Besides, only the creditor can sell a debt.  The
debtor has no interest in it which he can transfer.  In these ac-
counts the Douglasses and Conner were the debtors; the firm of
Douglas & Conner was the creditor.  The firm sold nothing to
Hasselman.  It was a sale by the three partners of their undi-
vided individual interests.  They could not become their own
creditors.  As to the other choses in action due the firm, they
sold their right in them as creditors, not as debtors.  Each one
sold his interest in the firm, which would be the share remaining
to him after the payment of the partnership debts and the final
settlement of the partnership affairs.  A partner has no transfer-
able interest in the property of a partnership to which, after its
ultimate adjustment, he is indebted."

Roach and Suiter are alleged to have transferred all their in-
terest in the copartnership funds and assets to plaintiff, and it
is doubtless claimed that this includes their interest in the funds

misappropriated. They had no interest in such funds, under the allegations of the complaint, because they are alleged to have fraudulently withdrawn and converted the entire fund. They had received it all. The liability rested on them in favor of plaintiff to account to him for his share of the fund misappropriated, if such misappropriation was of more than their share in the partnership assets, for if, upon such accounting, it should be ascertained that they were entitled to this amount or more of the partnership assets, they would be accountable to no one because of the withdrawal. The liability to account was in the nature of a right of action, but such right of action was not one in their favor, but against them. It matters not, as to their liability, how they obtained this $8,200. The taking in any manner, if they were not entitled to it, created a liabilitiy. If they were entitled to it, the manner of the taking is entirely immaterial.

There are only two ways under the law of partnership in which it can be determined that any liability existed on the part of Roach and Suiter, or either of them, to the plaintiff. One is by copartnership accounting in equity, and the other by a settlement of all partnership affairs by agreement of the partners. In the first case the amount of the liability must be found by and announced in the decree of accounting. In the other the amount must be fixed and stated in the agreement of settlement. The fact of liability and the amount thereof must be fixed and stated in either instance.

The complaint is utterly barren of any allegation that any accounting in equity has ever been had. It, however, alleges a settlement, but it fails to allege that upon such settlement any balance was found to be due from Roach or Suiter to the plaintiff. The settlement of partnership affairs in its broadest sense would include the settlement of all transactions between the partners relative to partnership affairs, and unless it is alleged that a balance was found to be due to one or the other of the copartners this court must presume that no such balance existed. No balance is alleged to have been found due from either Suiter

or Roach upon this settlement. The only allegations bearing upon this proposition are: "That neither of said defendants or said Roach were entitled to any part of said amount so withdrawn and converted by them, and that, had said sum not been withdrawn and converted to the aforesaid use, the whole thereof would have remained to the plaintiff upon a dissolution of said partnership hereinafter alleged, and would have belonged to him free from any claim or right of said defendants or said Roach." "That at the time said sums of money were converted by said defendants and said Roach as hereinbefore alleged, and at the time of the dissolution of said partnership and the settlement of its business and affairs between plaintiff and his copartners, the whole of said amount was in excess of the rights of said Suiter and Roach in said copartnership and in the money and property belonging thereto. That upon the dissolution of said copartnership its business and affairs were settled as between this plaintiff and said Roach and Suiter, and the whole of said sum of money so wrongfully converted as aforesaid was due and owing and belonged to this plaintiff as a portion of his individual share of said copartnership property and money." These allegations are mere conclusions of the pleader, and entirely fail as allegations of fact upon which an issue could be formed. If the allegations had been to the effect that upon a settlement of the copartnership affairs it was found and agreed that neither Roach nor Suiter had any interest in the funds so withdrawn, but that plaintiff was entitled to the whole thereof, a different aspect would have presented itself, but we find no such allegation.

Neither did the plaintiff, by the alleged purchase from Suiter and Roach, obtain an individual ownership of the funds so alleged to have been misappropriated. There is nothing in the allegations of the complaint tending to show that there was transferred to plaintiff by these purchases anything except whatever interest Roach and Suiter had in the partnership and property. If they had overdrawn their accounts as partners, or misappropriated a part of the partnership funds, their interests in

the partnership would be that much less than it would have been otherwise. It must be presumed, in the absence of anything tending to show the contrary, that when plaintiff became the purchaser of Roach's and Suitor's rights in and to the partnership he only became the owner of such rights as they then had. According to the allegations of the complaint, each was then indebted to the partnership, either by overdrafts, or misappropriation of partnership funds, or otherwise. It therefore follows that such transfers to plaintiff would only be of a balance of the interest which Suiter and Roach then had.

It must be presumed that all partnership accounts and transactions between the parties were settled and merged in the new agreement. (*Pierce* v. *Ten Eyck,* 9 Mont. 349, 23 Pac. 423; *Norman* v. *Hudleston,* 64 Ill. 11; *Johnson* v. *Wilson,* 54 Ill. 419; *Over* v. *Hetherington,* 66 Ind. 365; *Thompson* v. *Lowe,* 111 Ind. 272, 12 N. E. 476; *Roberts* v. *Ripley,* 14 Conn. 543; *Farnsworth* v. *Whitney,* 74 Me. 370; *Lesure* v. *Norris,* 11 Cush. 328; *Patterson* v. *Martin,* (6 Iredell) 28 N. C. 111; *Stoddard* v. *Wood,* 9 Gray, 90; *Woodward* v. *Winfrey,* 41 Tenn. 478; *Cobb* v. *Benedict,* 27 Colo. 342, 62 Pac. 222; *Hasselman* v. *Douglass,* 52 Ind. 252; *Van Scoter* v. *Lefferts,* 11 Barb. 140; *Murdock* v. *Mehlhop,* 26 Iowa, 213.)

In *Pierce* v. *Ten Eyck, supra,* this court says: "Pierce contributed to the firm the sum of $387.52 in excess of his share, and it was agreed that upon the dissolution of the copartnership this amount should be first deducted from the assets, and that the remainder should be divided equally between the parties. The sale by Ten Eyck to Pierce of his entire interest in the property of the firm worked a dissolution. *Rogers* v. *Nichols,* 20 Tex. 719. But we are of the opinion that the agreement did not contemplate a termination of the partnership in this way, and that Pierce, by his new bargain with Ten Eyck, which was a purchase without any reservation of demands, relinquished all claims of this class."

In *Over* v. *Hetherington, supra,* the court says: "The interest of a partner in the partnership property of his firm is his

share of what may be left of such property after the payment of the debts of the firm, and after the deduction therefrom of his indebtedness, if any, to his firm; for his copartners have a specific lien on his share of the assets of the partnership to secure his indebtedness to the firm, and in the ascertainment of his interest in the property of the firm his indebtedness thereto must be taken into the account, and settled out of his share. *Smith* v. *Evans,* 37 Ind. 526; *Donnellan* v. *Hardy,* 57 Ind. 393. When, therefore, as in this case, a partner makes a sale of his 'interest in the concern,' it must be presumed, we think, that he sells only his legal interest in the firm, and nothing more. It cannot be assumed, in such case, in the absence of any stipulation to that effect, that such partner sold, or intended to sell, if he could, his own indebtedness to the firm, or any part thereof. But is was alleged by the appellant that Berner fraudulently concealed his indebtedness to the firm, and that the appellant was ignorant of such indebtedness at the time of his purchase of Berner's interest. The appellant failed to allege what fraudulent acts were done by Berner in the concealment of his debts to the firm. It is well settled by the decisions of this court that when a party relies upon fraud as a ground for relief it is not enough for him to 'characterize the transaction as fraudulent by the simple use of that word. It is the office of a pleading to allege facts, not legal conclusions.' *Curry* v. *Keyser,* 30 Ind. 214; *Darnell* v. *Rowland,* 30 Ind. 342; *Ham* v. *Greve,* 34 Ind. 18, and *Joest* v. *Williams,* 42 Ind. 565, 13 Am. Rep. 377. The appellant did not claim that Berner kept the accounts of the firm. On the contrary, he alleged that English kept the books of the concern. He did not claim that Berner's indebtedness to the firm was not charged against him on the books of the firm; nor did the appellant allege that he did not have free access at all times to the firm's books. If the indebtedness of Berner to the firm appeared on its books, as we may assume that it did in the absence of any averment to the contrary, and if the firm's books were open at all times to the examination of the appellant, as we may assume they were in the absence of an averment to

the contrary, then it would seem that the appellant's alleged ignorance of the existence of Berner's indebtedness was the result of his own negligence, and inexcusable, and could not be pleaded by him as affording any ground of defense."

In *Thompson* v. *Lowe, supra,* the court uses the following language: "It may be taken as settled, too, that where one partner transfers his interest in the assets, including the book and accounts of the partnership, to a continuing member of the firm, or to another, and receives in payment for such interest the note of the purchaser, the maker of the note cannot set off an account apparently due the firm from the member whose interest was transferred. A sale by a partner of his interest in the assets of the firm does not, in the absence of a special agreement to that effect, imply that the purchaser becomes entitled to collect from the seller what may appear to be due from him on the firm books. *Over* v. *Hetherington,* 66 Ind. 365; *Hasselman* v. *Douglas,* 52 Ind. 252. The effect of such a sale is to transfer to the purchaser whatever interest the seller has in the assets of the partnership after the payment of all the partnership liabilities. In the absence of anything to show the contrary, it will be presumed that the account of the retiring member was adjusted in ascertaining the value of his interest, and that the value was increased or diminished in proportion as he was found the debtor or creditor of the firm. Where the purchaser agrees to pay the partnership liabilities, and also to pay the retiring partner a specified sum for his interest, the presumption will be, until the contrary appears, that the debts were ascertained, and that the sum agreed to be paid was the value of the retiring partner's interest, and that this included the adjustment of his own account with the firm, whether by such account he appeared to be debtor or creditor."

In *Farnsworth* v. *Whitney, supra,* the court says: "When the two members of which a firm is composed settle their partnership affairs and dissolve, and one of them takes an assignment of the other's interest in the partnership property, paying therefor a sum agreed upon by them, and assumes the payment of the

partnership debts, the effect of the arrangement is to extinguish the assignor's indebtedness to the firm. Such an arrangement implies that the assignor is to retain whatever he has already received from the firm, in addition to the consideration mentioned in the assignment. It is, in effect, an agreement that the sum paid is a balance due him after deducting what he has already received. No other rational interpretation can be put upon such an arrangement. It is impossible to believe that the one would pay or the other receive the sum agreed upon, unless all existing claims between them were to be thereby adjusted and settled. So held in *Lesure* v. *Norris,* 11 Cush. 328. In the case cited the partner's indebtedness had been charged upon the books of the firm. In this it had not. But we think this can make no difference in the result. A settlement operates as an accord and satisfaction of all indebtedness intended to be included in it, whether such indebtedness is evidenced by charges upon the books of the parties or not. The charges are only evidence of the indebtedness. The indebtedness may exist without the charges. And when the evidence is satisfactory that the parties intended a full and complete settlement of all their affairs, it will operate as an accord and satisfaction of indebtedness which is not charged as well as that which is."

In *Lesure* v. *Norris, supra,* the court says: "The sale to the defendant, under the circumstances stated, was a dissolution of the copartnership. *Taft* v. *Buffum,* 14 Pick. 322. It was also, in effect, an adjustment by the partners, as between themselves, of all its concerns, and a division and appropriation of everything belonging to it. Nothing further remained to be done to effect a complete settlement between themselves. By the bill of sale the plaintiff transferred all his interest in the company property, including debts which were due, to the defendant, and the latter thereby became sole owner of the whole. The interest which any partner has in the effects, rights and credits of a solvent partnership is the share or proportion of them which he will be entitled to receive upon a final adjustment and liquidation of its concerns. Whatever stands properly charged to him on the

company books, whether it be regarded as a debt due, or, perhaps, more correctly, as evidence that he has withdrawn already a certain amount of the capital invested or of the profits earned, is first to be deducted, and will, to that extent, diminish the share he is to receive. His interest in the concern is only the balance remaining after such deduction has been made. The balance, therefore, is what was conveyed to the defendant by the bill of sale executed by the plaintiff. It was his interest in the company property, and that was his share of its assets which remained after deducting the amount charged to him on the books of Norris and Lesure. That charge was extinguished by the transaction between the parties, because it was, in effect, an entire adjustment of it. There was no occasion, therefore, to make any entry upon the books in relation to the amount, because the general liquidation and settlement rendered attention to its details unimportant and immaterial. It is not pretended that there was any particular assignment of the amount in question to the defendant, and it clearly did not pass as any part of the interest of the plaintiff in the assets of the company."

In *Stoddard* v. *Wood, supra,* the court says: "This note was given for money drawn by the defendant out of the partnership of which he was a member, and for no other consideration; and was indorsed when overdue, after the dissolution of the partnership, to a partner having full knowledge of all the facts, and therefore standing on no better ground than the indorsers. This note, given as it was, constituted an item of debit in account, for which no action lies. It was not a debt to the firm. The difficulty of maintaining an action by a partnership against one partner is not merely a matter of parties, arising out of the difficulty of bringing suit. It lies much deeper. A promise by a partner to the partnership is a promise to pay himself with other persons, and it cannot be said that anything is due until the whole is settled, until all the assets are collected, and all debts paid. Until then it cannot be known whether there is any balance due; still less, what that balance is."

In *Woodward* v. *Winfrey, supra,* the court says: "The in-

strument, upon its face, purports to be a 'compromise of all the matters now [then] in dispute between the parties.' The paper must therefore be taken as at least *prima facie* evidence that the results herein stated were the final results of the ascertained rights of the respective partners, based upon a calculation or estimate comprehending all matters connected with or arising out of the whole partnership business, as well between the partners themselves as between the firm and third persons. Such, we think, is the plain import of the written instrument; and such also is the presumption of law. It cannot be supposed that in an adjustment professing to be a full and final one, and so intended to be by both parties, and brought about with so much pains and labor, so large and important an item would have been overlooked; and still less can it be supposed that Winfrey would have agreed to pay Woodward the sum of nearly $1,800, and let a decree be rendered against him for it, without claiming an abatement of that amount to the extent of Woodward's account, if it had been understood to have been transferred to him, and without once requiring any explicit evidence whatever of such a claim on Woodward. This is not to be believed."

We are satisfied, under the above authorities, that the allegations of plaintiff's complaint are not sufficient to show that he was the individual owner or entitled to the possession of the moneys alleged to have been misappropriated.

The only injury which could possibly result to plaintiff from the acts of misappropriation would be that plaintiff's interest and ownership in the property, assets and funds of the copartnership had been affected and reduced. How can it be said that the misappropriation of a portion of the funds of a partnership is an injury to one partner's individual interest therein until after a final accounting, either by way of a bill in equity for such purpose or by the specific agreement of the partners, has been had between the partners, and it has been determined that such funds belonged to such partner?

The case of *Sindelare* v. *Walker,* 137 Ill. 43, 27 N. E. 59, 31 Am. St. Rep. 353, is illustrative of this proposition. That

was a suit brought by one partner against his copartner and a third person, based upon the ground of collusion and fraud, whereby the entire assets of the copartnership were diverted. The allegations of the complaint were, in substance, that plaintiff and Hubka were partners in the dry goods business, owning a stock of goods and certain store fixtures, on which they had previously executed a chattel mortgage to defendants; that long before the maturity of this chattel mortgage, and without any authority of law whatever, defendant, by collusion with Hubka, wrongfully foreclosed the mortgage and took possession of not only the goods and chattels described therein, but also others of the value of $5,000, belonging to said firm, which he afterwards pretended to sell to Hubka; that by reason of such wrongful transfer plaintiff was deprived of his said goods and profits and the good will of said business; that said wrongs were committed in consideration of the confederation and collusion of said Hubka and defendant to injure and defraud plaintiff. There was no averment that the copartnership between plaintiff and Hubka had been dissolved, or any settlement had of their partnership affairs. The court says: "The declaration, therefore, not only fails to show any individual title or ownership in plaintiff to said property, partnership business or the profits or good will thereof, which he says he lost, but affirmatively discloses a state of facts from which it appears that he had only a community of interest therein with his partner, who consented to said transfer and all that was done by defendant in error. A partner's right to partnership property is an ownership of all the assets of the firm, subject to the ownership of every other copartner, all of the partners holding all of the firm assets subject to the payment of the partnership debts and liabilities. Parsons on Partnership, 350. It is clear, therefore, that the individual interest of one partner in the firm property and business can only be ascertained by a settlement of the partnership. *Bopp* v. *Fox*, 63 Ill. 540; *Chandler* v. *Lincoln*, 52 Ill. 77; *Menagh* v. *Whitwell*, 52 N. Y. 146, 11 Am. Rep. 683. This rule applies to the interest of a partner in the profits or good

will of the partnership business as well as to the tangible assets of the firm. Until plaintiff's actual interest in the partnership has been determined, there can be no ascertainment of his damages. *Buckmaster* v. *Gowen,* 81 Ill. 153; *Sweet* v. *Morrison,* 103 N .Y. 235, 8 N. E. 396. We are clearly of the opinion that on the facts stated in his declaration plaintiff has no standing in a court of law."

The case of *Sweet* v. *Morrison,* 103 N. Y. 235, 8 N. E. 396, is also illustrative of this subject. In this case Sweet's (plaintiff's) partners made a settlement of their business dealings with another partnership without the consent of Sweet, and against his protest. He brought an action to set aside the settlement and recover the amount of money which he claimed was due to him as a copartner in the business transactions which were settled by his copartners. The Supreme Court of New York held that he had not proved any loss, and further said: "It cannot be known, until a settlement of the partnership accounts, what loss has resulted from the fraud. Payson, Canda & Co. are not bound to pay Sweet's firm or Sweet's partners anything. Primarily the action is by Sweet against his copartners for a partnership settlement, in which he charges them with the willful and fraudulent waste of a valuable claim, and holds the debtors responsible also by reason of their collusive participation. That is the sole theory upon which the action can be maintained. To Sweet's partners and to his firm nothing is due from Payson, Canda & Co., and they can be compelled to pay only what is needed to perfect Sweet's rights as disclosed by an honest settlement. He has a right, notwithstanding the settlement actually made, to be placed in the position he would have been in if the full debt had been honestly paid to his copartners and he had received his aliquot share of the assets thus increased, after payment of the firm debts. When that is done, he has obtained full justice, and all to which he is entitled. But as the case stands his recovery may prove to be much too large or much too small. No final settlement of the firm accounts has been had, and every effort to prove their exact condition was prevented by the rulings

upon the trial. It may turn out that, even after charging the four partners with the entire amount of the disputed asset, Sweet has already had his full share, and is entitled only to judgment confirming him in its possession. In that event Payson, Canda & Co. would have nothing to pay. If it should appear that the firm debts are all paid, or, if not, that the four partners are so solvent and able to pay their proportions as to permit that subject to be disregarded, and that Sweet has already had from the firm property in excess a sum equal to one-quarter of the disputed claim, then the sole relief necessary to his protection is a judgment confirming him in the possession of what he has received. His partners claim that to be the truth; that he took in advance, and over and above his share, all this asset would produce; and, having got it already, has no claim to be paid it a second time. On the other hand, that claim of the four partners may prove to be untrue, and it may further appear that large debts are outstanding, for which Sweet is liable, and, at least, if his partners are insolvent, and unable to pay, and all the other firm property is exhausted, he may require from Payson, Canda & Co. a sum sufficient to restore the solvency of the firm, and secure him his share of the surplus, even if it took much more than the sum he has already recovered. In other words, whatever loss of Sweet on a final adjustment of the partnership accounts can be traced to the waste of the disputed assets by his partners in collusion with Payson, Canda & Co. must be made good to Sweet out of it. But when that is done full justice is rendered, and he is entitled to no more."

This complaint does not contain any allegation of an accounting between the partners of the partnership business, either in equity or by agreement, or that upon such accounting the moneys alleged to have been converted were found and agreed to belong to the plaintiff. It is therefore insufficient, and we advise that the judgment appealed from be reversed.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment is reversed and the cause remanded.

Mr. Chief Justice Brantly, not having hard the argument, takes no part in this decision.

Application for an order modifying the foregoing opinion, denied December 23, 1904.

Rehearing denied January 16, 1905.

